**STATE of Iowa, Appellee,**

v.

**Terrance P. WEBB, Appellant.**

**No. 65028.**

Supreme Court of Iowa.

Aug. 26, 1981.

Rehearing Denied Sept. 17, 1981.

Wilford M. Forker, Sioux City, for appellant.

Thomas J. Miller, Atty. Gen., Thomas N. Martin, Asst. Atty. Gen., Patrick C. McCormick, Woodbury County Atty., and David L. Gill and Charles N. Thoman, Asst. County Attys., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

SCHULTZ, Justice.

At approximately 11:40 a. m. on February 12, 1979, eighty-year-old Mildred White was found on the floor of the basement garage of her apartment in Sioux City. She stated that she had been assaulted by an armed assailant and that certain items of jewelry had been stolen. Mrs. White was taken by ambulance to St. Joseph's Hospital, where she died on February 26, 1979. Charges were subsequently filed against defendant, Terrance P. Webb.

Defendant was convicted by jury verdict of involuntary manslaughter, first-degree robbery, first-degree theft, and assault while participating in a felony in violation of, respectively, sections 707.5(1), 711.2, 714.2(1), and 708.3, The Code. Defendant appeals his convictions, contending the trial court erred in: (1) allowing expanded media coverage of his trial; (2) not instructing the jury that it had to find flight beyond a reasonable doubt; (3) refusing to compel disclosure of a confidential informant; (4) allowing inadmissible rebuttal testimony; (5) refusing to allow him to depose three police officers; (6) overruling his motion *in limine* to preclude cross-examination concerning a previous criminal conviction; (7) allowing expert medical testimony concerning cause of death to be based upon a reasonable medical certainty; (8) refusing to conduct separate *voir dire* of prospective jurors and refusing to sequester the jury; and (9) concluding that sufficient evidence existed to corroborate his confession.

The factual backdrop of the case is not material to this appeal. The relevant facts will therefore be discussed with defendant's assignments of error, to which we now turn.

I. *Expanded media coverage.* Defendant alleges that the trial court erred in overruling his pretrial motion to exclude photographic and electronic news coverage from within the courtroom during his trial. Defendant contends that such trial coverage violated his constitutional rights, principally under the fourteenth amendment to the United States Constitution and article I, section 9 of the Iowa Constitution.

On January 1, 1980, Canon 3 A(7) of the Iowa Code of Judicial Conduct was suspended and Revised Canon 3 A(7) substituted therefor to allow expanded media coverage[1] of judicial proceedings on an experimental basis.[2] Revised Canon 3 A(7) provides:

Subject at all times to the authority of the presiding judge to control the conduct of proceedings before the court to ensure decorum and prevent distractions and to ensure the fair administration of justice in the pending cause, electronic media and still photography coverage of public judicial proceedings in the trial and appellate courts of this state shall be allowed in accordance with rules of procedure and technology promulgated by the Supreme Court of Iowa.

Rule 2(b)–(c) states:

(b) A judge shall permit expanded media coverage of a proceeding, unless he or she concludes, on objection and showing of good cause that, under the circumstances of the particular proceeding such coverage would materially interfere with the rights of the parties to a fair trial.

(c) Such media coverage of a witness may be refused by the judge upon objection and showing of good cause by the witness.

In his brief defendant relies on *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), as establishing a per se rule that expanded media coverage of criminal prosecutions constitutes an inherent denial of due process. In *Chandler v. Florida,* 449 U.S. 560, 582–83, 101 S.Ct. 802, 813–14, 66 L.Ed.2d 740, 757 (1981), however, the United States Supreme Court held that "[a]bsent a showing of prejudice of constitutional dimensions," the "Constitution does not prohibit a state from experimenting with the program authorized by Canon 3A(7)." The Court stated:

The risk of juror prejudice is present in any publication of a trial, but the appropriate safeguard against such prejudice is the defendant's right to demonstrate that the media's coverage of the case—be it printed or broadcast—compromised the ability of the particular jury that heard the case to adjudicate fairly.

*Id.* at 575, 101 S.Ct. at 810, 66 L.Ed.2d at 752.

Alternatively, a defendant might show that broadcast coverage of his particular case had an adverse impact on the trial participants sufficient to constitute a denial of due process....

To demonstrate prejudice in a specific case a defendant must show something more than juror awareness that the trial is such as to attract the attention of broadcasters.

*Id.* at 581, 101 S.Ct. at 813, 66 L.Ed.2d at 756. To establish prejudice a defendant can request a posttrial evidentiary hearing "to show adverse impact or injury." *Id.* at 577, 101 S.Ct. at 811, 66 L.Ed.2d at 753.

We believe the *Chandler* prejudice standard is also the appropriate test for resolving challenges to expanded media coverage premised on the Iowa Constitution. Accordingly, we adopt that standard. In the present case defendant has not shown prejudice. There is no indication in the record that defendant requested an evidentiary hearing or that any of the jurors or

---

1. Rule 1 of the rules of procedure and technology promulgated by this court pursuant to Revised Canon 3 A(7) defines "expanded media coverage" to include: "broadcasting, televising, electronic recording or photographing of judicial proceedings for the purpose of gathering and disseminating news to the public."

2. Canon 3 A(7) was originally suspended for a period of one year. By court order filed December 12, 1980, the suspension was extended until further order of this court to be filed not later than December 31, 1981.

trial participants were adversely affected by the expanded media coverage of defendant's trial. We therefore hold that the trial court did not err in overruling defendant's motion to preclude expanded media coverage of his trial.

■ II. *Flight instruction.* Instruction 16 instructed the jury on flight:

If you find that the offenses charged in the Trial Information were committed and that the defendant thereafter fled from the community where he resided for the purpose of avoiding or regarding [sic] prosecution, then such flight is a circumstance you may consider in determining the guilt or innocence of the defendant. The credit and weight, if any, to be given such circumstance is for the jury to determine from a consideration of all the evidence in the case.

Defendant contends that failure of the trial court to instruct that the jury must find beyond a *reasonable doubt* that defendant fled to avoid or retard prosecution constituted error. Defendant relies on *State v. Barr*, 259 N.W.2d 841, 842 (Iowa 1977), in which the trial court instructed the jury on flight in relevant part: "[I]f you . . . find beyond a reasonable doubt that the defendant fled from the scene for the purpose of avoiding and retarding the prosecution. . . ." The inclusion of the reasonable doubt standard was not in issue, however.

Defendant's argument was rejected in *State v. Savage*, 288 N.W.2d 502, 507 (Iowa 1980):

Since flight is not an element of this offense, there is no constitutional requirement that it be found by proof beyond a reasonable doubt. The only requirement is that when it considers all the evidence, including the fact of flight, the jury must be convinced of all the elements of the crime beyond a reasonable doubt.

Flight is not an essential element of any of the offenses defendant was charged with or convicted of. Furthermore, the jury was thoroughly instructed that the State had the burden to prove all of the essential elements of the offenses charged beyond a reasonable doubt.

Defendant also contends that there was no evidentiary foundation justifying submission of the flight instruction to the jury. We disagree. The record shows that the robbery occurred on February 12, 1979. Defendant traveled to Cedar Rapids on February 15 and returned to Sioux City on February 17. Mrs. White died on February 26. Defendant knew of the death and told two witnesses that he would be leaving town for awhile. Thereafter, defendant went to Cedar Rapids and Omaha and Jackson, Nebraska. After making arrangements with his attorney, he returned to Sioux City on March 5.

■■ When evidence creates a question concerning a defendant's reason for leaving town shortly after the commission of a crime, it is proper for the trial court to submit an instruction on flight. *State v. Horstman*, 222 N.W.2d 427, 431 (Iowa 1974). In this case defendant left Sioux City shortly after two significant events—the robbery and the death of the victim. These departures constitute a sufficient evidentiary foundation for submission of the flight instruction. "It was for the jury to say, under all the circumstances, whether he departed because of his consciousness of guilt." *State v. Bige*, 195 Iowa 1342, 1348, 193 N.W. 17, 20 (1923), *partially overruled on other grounds, State v. Johnson*, 217 N.W.2d 609, 612 (Iowa 1975).

III. *Refusal to compel disclosure of the identity of a confidential informant.* Defendant contends that the trial court erred in overruling his motion to disclose the identity of a State's confidential informant and his motion requesting an *in camera* hearing for the purpose of having the informant answer written interrogatories propounded by defendant, thereby violating his rights of confrontation and to due process under the sixth and fourteenth amendments to the United States Constitution and article I, sections 9 and 10 of the Iowa Constitution. Defendant's contention is without merit.

■ In *State v. Lamar*, 210 N.W.2d 600, 602 (Iowa 1973), this court stated that gen-

erally the State is privileged to withhold the identity of a person who furnishes information relating to violations of the law.

This privilege is premised upon public interest in maintaining the flow of information essential to law enforcement.

To be weighed against that interest, however, is an accused's right of access to facts necessary for the preparation and presentation of his defense, and to a fair trial.

Therefore, any determination as to whether an informer's identity is to be revealed requires a balancing of the aforesaid countering interests in light of the facts and circumstances peculiar to each case. Among the facts to be considered in this weighing process are (1) nature of the offense charged; (2) defenses raised; and (3) potential significance of an informer's testimony.

The burden is inceptionally upon defendant to show cause for such disclosure.

*Id.* at 602–03. "Mere speculation an informer may be helpful is not enough to carry the burden and overcome the public interest in the protection of the informer." *State v. Sheffey*, 243 N.W.2d 555, 559 (Iowa 1976). *See also State v. Horn*, 282 N.W.2d 717, 725 (Iowa 1979). However, the identity of an informant should ordinarily be divulged when the informant was present at the scene of, or participated in, the offense. *State v. Schlick*, 257 N.W.2d 59, 63 (Iowa 1977); *State v. Battle*, 199 N.W.2d 70, 71 (Iowa 1972). In such cases disclosure will almost always be material to the defendant's defense, especially when a defense such as entrapment, misidentification, or alibi has been asserted. *State v. Sheffey*, 243 N.W.2d at 558.

██ Prior to trial the trial court conducted an *in camera* examination of two police reports concerning the confidential informant. The court found:

The informant was not present at the alleged crime scene. The informant was not listed as a trial witness. The informant has only hearsay information. The informant has no exculpatory information. The informant cannot corroborate

defendant's general denial or his alibi defense. The informant has no knowledge to negative any elements of any offense charged against defendant. All knowledge of the informant is based upon the personal knowledge of other persons whose testimony, according to the minutes, may be overruled.

. . . . This Court . . . concludes that the State's interest in protecting the informant's identity outweighs the interest of the defendant in compelling disclosure.

Defendant does not challenge the findings of the trial court. He merely speculates that disclosure of the informant's identity would have been helpful in the preparation of his defense. Defendant, therefore, failed to meet his burden to show cause for disclosure. In addition, we find no abuse of discretion on the part of the trial court in refusing to allow defendant to submit written interrogatories. Accordingly, we hold that the trial court did not err in overruling defendant's motions.

IV. *Admission of rebuttal testimony.* The State called Larry Bower as a rebuttal witness at trial. Bower testified in relevant part that on the evening of March 28, 1979, defendant's brother Michael called him and said that the police had a search warrant and were looking for a handgun. He stated that Michael requested permission to bring his gun and a hand grenade to a farm where Bower resided. Bower also testified that shortly thereafter Michael arrived at the farm and gave him a canvass bag containing a gun and a hand grenade. Bower identified the gun as a .357 magnum caliber Colt Python. Defendant objected at trial and reasserts on appeal: (1) Bower's testimony was not proper rebuttal; (2) part of the testimony was inadmissible hearsay; and (3) the probative value of the testimony was substantially outweighed by prejudice to him.

A. *Proper rebuttal.* The involvement of a gun in the offenses for which defendant was charged was in issue at trial. Three witnesses testified that Mrs. White told them that her assailant was armed with a gun. A police officer testified that in searching defendant's apartment, a box for

a Colt Python revolver and a carrying case for a gun were found. Another witness testified that he had seen such a gun in defendant's possession on several occasions, the last of which was in early November 1978. Defendant testified that the gun and box belonged to his brother Michael, and he had last seen it during the summer of 1978. Defendant also testified that Michael had sold the gun.

 "Rebuttal testimony is 'that which explains, repels, controverts, or disproves evidence produced by the other side.'" *State v. Bakker*, 262 N.W.2d 538, 543 (Iowa 1978) (quoting *State v. Nelson*, 261 Iowa 204, 209, 153 N.W.2d 711, 714 (1967)); *State v. Hansen*, 225 N.W.2d 343, 351 (Iowa 1975); *State v. Walker*, 218 N.W.2d 915, 919 (Iowa 1974). Evidence that has no direct tendency to do this is inadmissible on rebuttal. *State v. Nelson*, 261 Iowa at 209, 153 N.W.2d at 715. However, the trial court has considerable discretion in admitting rebuttal evidence, and its ruling will be disturbed only upon a showing of clear abuse of discretion. *State v. Bakker*, 262 N.W.2d at 543.

 Defendant has not shown that the trial court abused its discretion. Bower's rebuttal testimony placed Michael in possession of the gun following the alleged commission of the offenses for which defendant was charged and, therefore, tended to contradict defendant's testimony that Michael had sold it. Bower's testimony was thus admissible rebuttal evidence.

B. *Hearsay*. This court has adopted the definition of hearsay contained in Fed.R. Evid. 801(c): "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Fingert*, 298 N.W.2d 249, 251 (Iowa 1980). "In determining whether a statement constitutes hearsay, we look to the purpose for which the testimony is offered." *State v. Moritz*, 293 N.W.2d 235, 243 (Iowa 1980). The trial court overruled defendant's hearsay objection as to what Michael told Bower during their telephone conversation and admon-

ished the jury that Michael's statements were not offered, and were not to be considered, as proof of the matters asserted, but were offered for the limited purpose of explaining Bower's state of mind and subsequent activity. *See State v. Rush*, 242 N.W.2d 313, 319 (Iowa 1976) ("The distinction between statements offered to prove the truth of a matter asserted and those offered to prove only ... their effect on subsequent actions of the hearer, has been recognized by this court.").

 Although we believe it is a close question, we need not determine whether the statements at issue constituted inadmissible hearsay, because, even if so, admission thereof was harmless error. Generally, the erroneous admission of hearsay evidence must be presumed to be prejudicial unless the contrary is affirmatively established. *State v. Galvan*, 297 N.W.2d 344, 348 (Iowa 1980); *State v. Horn*, 282 N.W.2d at 724; *State v. Judkins*, 242 N.W.2d 266, 268 (Iowa 1976). In *State v. Johnson*, 272 N.W.2d 480, 482–83 (Iowa 1978), however, we held that the erroneous admission of hearsay evidence was not prejudicial when a *multiplicity* of substantially the same evidence appeared in the record without objection. *But cf. State v. Horn*, 282 N.W.2d at 724 (hearsay evidence in *Johnson* not presumed prejudicial because it "was extremely trustworthy in light of the multiplicity of substantially the same evidence introduced").

 As in *Johnson*, there was a multiplicity of substantially the same evidence in the present case. Several witnesses testified as to the existence of the handgun. Also Bower's admissible testimony established that Michael delivered a handgun to him at the farm and identified it as a .357 magnum Colt Python. Furthermore, Bower's father-in-law testified that he found the gun, was upset, buried it, and that Michael took custody of it when he later dug it up. Michael's purpose in taking the gun to the farm was also explained by testimony, which, although hearsay, was received without objection. Bower testified that after arriving at the farm Michael

stated that he "did not want the handgun to be implicated in any of Terry's problems."

C. *Prejudice.* A trial court should exclude evidence upon proper objection when its probative value is substantially outweighed by the danger of unfair prejudice. *Kalianov v. Darland,* 252 N.W.2d 732, 736 (Iowa 1977); *see E.I. du Pont de Nemours & Co. v. Berkley & Co.,* 620 F.2d 1247, 1272 (8th Cir. 1980); Fed.R.Evid. 403. Whether the probative value of proffered evidence is outweighed by the danger of unfair prejudice to the defendant is a determination committed to the discretion of the trial court. The court's ruling will be reversed on appeal only when a clear and prejudicial abuse of that discretion is shown. *State v. Harmon,* 238 N.W.2d 139, 145 (Iowa 1976); *State v. Wright,* 203 N.W.2d 247, 251 (Iowa 1972); *State v. Wallace,* 259 Iowa 765, 769–771, 145 N.W.2d 615, 618–19 (1966).

As already noted, there was evidence connecting defendant with the .357 magnum Colt Python prior to the time of the offenses for which defendant was convicted. The testimony of Bower and his father-in-law placed possession of this gun in Michael and was probative in that it tended to contradict defendant's testimony that Michael had previously sold it. As impeaching testimony, it was of course prejudicial to defendant. Defendant has not shown, however, that the prejudice was unfair, much less that it substantially outweighed the probative value of the testimony. There was evidence connecting a handgun to the crime and evidence connecting a handgun to defendant. Evidence of Michael's possession of the gun was therefore highly relevant to impeach defendant's testimony that the gun had been sold. Accordingly, we find no abuse of discretion on the part of the trial court.

V. *Refusal to allow depositions.* Defendant contends he was denied a fair trial because the trial court overruled his motion to depose three police officers "believed to have information which would aid the defense." We disagree.

First, as the trial court ruled, defendant's motion was untimely. Iowa R.Crim.P. 10(2)(d) stipulates that requests for discovery are pretrial motions. At the time relevant hereto rule 10(4) provided that such motions "shall be filed either within thirty days after arraignment or prior to the impaneling of the trial jury, whichever event occurs earlier, unless the period for filing is extended by the court for good cause shown." Although arraignment was held March 15, 1979, the trial court extended the period for completion of discovery to October 6, 1979. Defendant's motion to depose the three police officers was not filed until December 20, 1979.

Secondly, Iowa R.Crim.P. 12 did not require the trial court to allow the depositions. Rule 12, which governs depositions, provides in pertinent part:

1. *By defendant.* A defendant in a criminal case, may examine all witnesses listed by the state on the indictment or information or notice of additional witnesses . . . .

. . . .

2. *Special circumstances.* Whenever due to special circumstances of the case it is in the interest of justice that the testimony of a prospective witness not included in subsection 1 or 3 of this rule be taken and preserved for use at trial, the court may upon motion of a party and notice to the parties order that testimony of such witness be taken by deposition . . . .

For purposes of this subsection, special circumstances shall be deemed to exist, and the court shall order that depositions be taken, only upon the showing of necessity arising from either the following circumstances:

a. The information sought by way of deposition cannot adequately be disclosed by a bill of particulars, or by voluntary statements.

b. Other just cause necessitating discovery by deposition.

The three police officers who defendant sought to depose were not listed as witnesses by the State on the trial information or notice of additional witnesses. Subsection (1) is therefore inapplicable. In addition, defendant has not shown the existence of special circumstances within the meaning of rule 12(2).

"Discovery matters are committed to the sound discretion of the trial court, and are reviewable only upon an abuse of that discretion. Error in the administration of discovery rules is not reversible absent a demonstration that the substantial rights of the defendant were prejudiced." *State v. Gates*, 306 N.W.2d 720, 725 (Iowa 1981) (citations omitted). Defendant merely speculates that the three police officers "had knowledge of others who were suspects at one time or another," and this "information may have been vital to defendant's alibi defense." These bare assertions do not demonstrate prejudice to a substantial right.

■ VI. *Prior conviction.* On September 9, 1976, defendant was convicted by guilty plea of breaking and entering with intent to commit larceny, a felony. *See* §§ 687.2, 708.8, The Code 1975. In a motion *in limine* defendant requested the trial court to prohibit the State from cross-examining him with respect to this prior conviction. Defendant alleges the trial court erred in overruling his motion.

Section 622.17, The Code provides: "A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof." In *State v. Martin*, 217 N.W.2d 536, 542 (Iowa 1974), we held that

> for the purpose of attacking the credibility of any witness, including an accused under Code § 622.17, evidence that he has been previously convicted of a felony is admissible only if (1) the felony involved dishonesty or false statement, and (2) the judge determines any danger of unfair prejudice does not substantially outweigh the probative value of such prior felony conviction, taking into account such factors as (a) nature of the conviction, (b) its

bearing on veracity, (c) its age, and (d) its propensity to improperly influence the minds of the jurors.

Defendant's prior conviction involved dishonesty. *See State v. Conner*, 241 N.W.2d 447, 455 (Iowa 1976) ("Felonies involving theft reflect on veracity."); *State v. Miller*, 229 N.W.2d 762, 766–69 (1975) (larceny involves dishonesty). In addition, defendant's prior conviction was not too remote in time to be relevant as to his credibility. *See State v. Jones*, 271 N.W.2d 761, 765–66 (Iowa 1978) (eight-year-old perjury conviction); *State v. Conner*, 241 N.W.2d at 454–55 (six-year-old larceny and burglary conviction). Hence, we find no abuse of discretion on the part of the trial court.

VII. *Expert medical opinion testimony as to cause of death.* Three physicians testified on behalf of the State at trial as to the cause of Mrs. White's death. Their opinions were based upon a "reasonable medical certainty." Defendant objected, and reasserts here, that the required standard for such testimony is "beyond a reasonable doubt."

■ This issue was addressed by the Pennsylvania Supreme Court in *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). The court stated:

> It is well established that an individual may not be convicted of murder unless the Commonwealth establishes every essential element of the crime beyond a reasonable doubt. One such required element is the causal connection between the death and the criminal act. However, to permit evidence of a medical opinion as to cause of death to be considered by the trier of fact, it is only necessary that the witness entertain a "reasonable degree of medical certainty" for his conclusions....
>
> " 'Beyond a reasonable doubt' is a legal standard. Medical causation and legal causation are qualitatively different in their application. Whether the Commonwealth's evidence is sufficient to warrant a finding of causal connection is initially a legal question for the

court, but whether it is persuasive beyond a reasonable doubt is for the jury to say."

*Id.* at 56, 337 A.2d at 879 (quoting *Commonwealth v. Webb*, 449 Pa. 490, 496, 296 A.2d 734, 737 (1972)) (citations omitted). *See also State v. Nimmo*, 247 N.W.2d 228, 230 (Iowa 1976) ("witness may not express an opinion on a question of law or mixed law and fact"). We agree with this reasoning, and hold that the trial court correctly overruled defendant's objections concerning the physicians' opinions as to the cause of Mrs. White's death.

VIII. *Refusal to conduct separate* voir dire *of prospective jurors and sequester the jury.* Defendant contends the trial court erred in overruling his motion to have the prospective jurors examined separately, thereby depriving him of a fair trial.

Individual *voir dire* of prospective jurors, out of the presence of other prospective jurors, lies within the discretion of the trial court. *State v. McDaniel*, 265 N.W.2d 917, 920–21 (Iowa 1978). To be entitled to reversal on the ground that the trial court refused to allow individual examination of prospective jurors, a defendant must show that prejudice resulted from collective examination. *State v. LeMatty*, 263 N.W.2d 559, 562 (Iowa Ct.App.1977). In the present case defendant has failed to show, and the record provides no basis for finding, that the trial court abused its discretion and prejudice resulted. Defendant simply alleges that there was substantial pretrial publicity—sixty-seven news stories covering events preceding trial. We will not presume prejudice from the mere publication of news stories, however. *State v. Frank*, 298 N.W.2d 324, 327 (Iowa 1980); *State v. Sefcheck*, 261 Iowa 1159, 1173, 157 N.W.2d 128, 136 (1968).

Defendant also contends that the trial court had a constitutional duty to sequester the jury. He maintains that because of the pretrial publicity and expanded media coverage of the trial the trial court's general admonitions to the jury not to expose themselves to publicity concerning the trial were not sufficient to protect defendant's rights to an impartial jury, a fair trial, and due process of law. We find no merit in defendant's argument.

Sequestration of the jury is a matter committed to the discretion of the trial court. *State v. Williams*, 285 N.W.2d 248, 265 (Iowa 1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980); *State v. Lowder*, 256 Iowa 853, 864, 129 N.W.2d 11, 18 (1964), *cert. denied*, 380 U.S. 965, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965). *See also* ABA Standards Relating to Fair Trial and Free Press 3.5(b) (App. Draft 1968). Absent a showing of abuse of discretion resulting in prejudice to the defendant, we will not interfere with the trial court's ruling on a request to have the jury sequestered. *See State v. Williams*, 285 N.W.2d at 265. The trial court was careful to admonish the jury against exposure to media publicity concerning the trial and other improper influences that might affect their verdict. When a jury has been clearly admonished not to expose themselves to media publicity of the trial in which they are serving as jurors, a presumption arises that they will not violate that admonition. *State v. Frank*, 298 N.W.2d at 327; *State v. Sallis*, 262 N.W.2d 240, 246 (Iowa 1978) (quoting *Rizzo v. United States*, 304 F.2d 810, 815 (8th Cir.), *cert. denied*, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962)). Defendant has not shown that the jury disregarded the trial court's admonitions or that he was otherwise prejudiced by the court's refusal to sequester the jury. We therefore find no reversible error.

IX. *Corroboration of confession.* Defendant contends the trial court erred in overruling his motion for a new trial because his confession to Richard Massey, who testified on behalf of the State, was not corroborated by "other proof that the defendant committed the offense," as required by Iowa R.Crim.P. 20(4). In *State v. Hobson*, 284 N.W.2d 239, 243 (Iowa 1979), we stated that "[t]he existence of corroborative evidence is an issue for the court, and its sufficiency is ordinarily for the jury." As in *Hobson*, we find the evidence sufficient for jury consideration.

X. *Conclusion.* We have thoroughly examined all of defendant's assignments of error, whether or not expressly addressed in this opinion, and find them all to be without merit. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.