**STATE of Iowa, Plaintiff–Appellee,**

v.

**Michael STRIBLEY, Defendant–Appellant.**

**No. 93–1816.**

Court of Appeals of Iowa.

March 30, 1995.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Bridget A. Chambers, Asst. Atty. Gen., Thomas S. Mullin, County Atty., and James J. Katcher, Asst. County Atty., for appellee.

Heard by DONIELSON, C.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

Defendant-appellant Michael P. Stribley appeals his conviction of sexual abuse in the second degree in violation of Iowa Code sections 709.1 and 709.3(2) (1993). Defendant contends the trial court abused its discretion in allowing certain medical evidence and he was denied effective assistance of trial counsel by his trial attorney's failure to object to cross-examination that went beyond the scope of direct examination. We affirm.

Defendant was charged with abusing his girlfriend's daughter. The child, born on April 15, 1981, was at the time of the alleged events under twelve years of age.

The State's case in chief was based primarily on the testimony of the victim and the examining physician. The child testified defendant would sit close to her and make her uncomfortable and put his arm around her or on her leg. She further testified he had touched her private parts several times a week since she had been five or six. She recalled specific instances in kindergarten or first grade when defendant touched her vagina with his hand and he rubbed her vagina on the outside and underneath her underwear. She further testified at times he would insert his finger in her vagina and move it back and forth and sometimes he put his penis on her vagina and other times he pushed it in her vagina. She said when he pushed it in, it was an up and down action. She testified when he did this her vagina hurt. She also testified defendant had oral sex with her. The jury apparently rejected the victim's testimony there was oral sex and vaginal penetration because they did not find defendant guilty of charges connected with that evidence.

When the child told her mother, it was discussed with defendant who apologized and said he would get help. Subsequently, a social worker removed the child from school and she was interviewed at the Marian Health Center by Katie Boley and examined by Dr. Gary Carlton.

■ Defendant's first challenge concerns the testimony of Carlton. Carlton examined the child with a colposcope, an instrument that lets a doctor view the vagina microscopically and allows photographs to be taken. During the examination, Carlton discovered what he called a "questionable notch in the

posterior of the hymen." He also noted some hemorrhages. He did not find any trauma to the vagina. He had a strong suspicion there was trauma to the hymen and also a strong suspicion there had been vaginal penetration.

Defendant had the child examined by Dr. Kathleen Opdebeeck whose testimony was admitted by way of deposition. Opdebeeck gave the opinion someone could not tell from an examination of the slides taken if the child had been penetrated or if sexual abuse had occurred.

Carlton testified at trial. He was asked if he were able to offer an opinion within a reasonable degree of medical certainty whether the child had suffered trauma to her vagina. Carlton said he could not say, but went on to say he felt it "strongly suspicious" there was trauma to her hymen.

Carlton testified he is uncomfortable with the term "within a reasonable degree of medical certainty." He acknowledges the notches in the hymen, which formed his basis for the strong suspicion of penetration, may exist for other reasons.

Defendant had sought to exclude Carlton's testimony and defendant argues the testimony should not have been admitted. He contends the doctor's suspicions were misleading, prejudicial, and not probative of the fact in issue.

The State advances error on this issue was not properly preserved at the trial court level. We address defendant's challenge without deciding the preservation of error issue.

Defendant contends Carlton's opinion evidence should not have been admitted and the admission of Carlton's opinion was contingent on his determining it was based on reasonable medical certainty. Defendant relies, in part in his argument, on the Iowa case of *State v. Webb*, 309 N.W.2d 404 (Iowa 1981), which he contends supports his position.

We do not agree with defendant that *Webb* provides support for the issue he argues. *Webb*, a murder case, addressed the issue of expert testimony to prove cause of death and dealt with the degree of proof needed to prove the causal connection between the criminal act and the cause of death, one of the necessary elements in a murder case. The court in *Webb* said there was substantial evidence to prove beyond a reasonable doubt the causation element even though the medical experts testified causation was within the realm of "reasonable medical certainty" and did not go so far as to testify it was "beyond a reasonable doubt." *See id.* at 413–14.

We agree with defendant, *Webb* supports the proposition the State needs to prove the causation element in a murder case by evidence that shows reasonable medical certainty. In this sexual abuse case, the State does not have to prove the crime caused physical injury. Consequently, the question is, as in *Webb*, not whether the doctor's testimony met the required level of proof to show a causal connection.

■ The only question is whether the trial court abused its discretion in admitting the doctor's opinion in evidence. The doctor's opinion was admissible in evidence. In order to show an abuse of discretion, one generally must show the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976).

■ Iowa law is clear, if an expert is qualified, he or she should be allowed to state his or her opinion, either as to probable or merely possible causation. *Dickinson v. Mailliard*, 175 N.W.2d 588, 591 (Iowa 1970). An expert may express his or her opinion either as to the possibility, probability, or actuality of causation. *Becker v. D. & E. Distrib. Co.*, 247 N.W.2d 727, 730 (Iowa 1976); *Winter v. Honeggers' & Co.*, 215 N.W.2d 316, 321 (Iowa 1974). We affirm the trial court on this issue.

Defendant's second claim is he was denied his constitutional right to effective trial counsel. He contends his trial counsel should have limited the scope of the cross-examination of Opdebeeck. Opdebeeck, a defense witness, had been engaged to examine the slides taken by Carlton. After examining the slides, she disagreed with Carlton that

from the slides an opinion could be weaned concerning the alleged abuse.

Opdebeeck's testimony was admitted through deposition. Defendant contends his trial attorney should have objected to the State's cross-examination of Opdebeeck as to: (1) the child sexual abuse accommodation syndrome; (2) a critique of the interviewing techniques employed by Katie Boley, who was depicted on the videotape played during the State's case; and (3) Opdebeeck's opinion of Dr. Underwager, listed as an expert witness for defendant. Defendant contends if the proper objections had been made, the three objections to the cross-examination would have been sustained. He also contends he was prejudiced by the cross-examination.

 In order to prevail on his claim of ineffective assistance of counsel, defendant must show, by a preponderance of the evidence that: (1) counsel failed to perform an essential duty; and (2) prejudice resulted. *See State v. Risdal,* 404 N.W.2d 130, 131–32 (Iowa 1987); *Edman v. State,* 444 N.W.2d 99, 101 (Iowa App.1989). Defendant must establish both of these requirements by a preponderance of the evidence. *Taylor v. State,* 352 N.W.2d 683, 685 (Iowa 1984). In evaluating counsel's performance, we presume counsel acted competently. *See Risdal,* 404 N.W.2d at 131.

### CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME

 A theory called the child sexual abuse accommodation is used by some experts to explain why children delay reporting sexual abuse, do not show fear of the perpetrator, and will confuse detail of the abuse when reporting it. Defendant contends this was prejudicial to his case and allowed the State to admit evidence of the syndrome which might otherwise not have been admissible.

Opdebeeck testified, during cross-examination, she was familiar with the child sexual abuse accommodation syndrome and the syndrome describes the "various steps of how children get sexually abused and then what happens to them." She testified that initially the abuse makes the child feel special and then progresses to touching the child and then the abuse progresses to a stage where the abuser tells the child to keep the abuse secret. She said the child tells of the abuse but then later may recant the allegations. Opdebeeck further testified it is not unusual for a child to delay reporting the abuse or to continue to get along with the perpetrator after sexual abuse has occurred.

The State alleges defense counsel breached no duty to defendant in not objecting to the testimony regarding the accommodation syndrome as there was other similar evidence in and defense counsel may have had tactical reasons for allowing the testimony. The State alleges similar testimony was introduced through the testimony of Underwager.

The State further alleges it was entitled to inquire as to Opdebeeck's knowledge about sexual abuse in order to evaluate her credibility as a witness and, consequently, any objection lodged would have been overruled.

Child sexual abuse accommodation syndrome first came from an article titled, "The Child Sexual Abuse Accommodation Syndrome" published in 1983 and written by Dr. Roland Summit. Summit described five characteristics commonly observed in sexually abused children: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicted, and unconvincing disclosure; and (5) retraction. The accommodation syndrome was never intended to detect sexual abuse. Rather, it assumes the presence of abuse, and explains the child's reaction to it. The accommodation syndrome is not probative of abuse. Additionally, accommodation syndrome does not have established reliability. The place of the accommodation syndrome in the courtroom is only to explain delayed reporting of abuse, recantation of allegations of abuse, and denial abuse has occurred. It is only for these rehabilitative functions the accommodation syndrome serves a useful forensic function. *See* John E.B. Myers et al., *Expert Testimony in Child Sexual Abuse Litigation,* 68 Neb. L.Rev. 68 (1989).

■ The accommodation syndrome has not been generally accepted in the relevant scientific community as a means of detecting abuse. *See People v. Bowker,* 203 Cal. App.3d 385, 249 Cal.Rptr. 886 (1988); *Lantrip v. Commonwealth,* 713 S.W.2d 816 (Ky. 1986). There is a serious problem with the accommodation syndrome in that in some instances it seeks to show why the behavior of an alleged abused child is the same as, not different from, the behavior of a child who has never been abused. The testimony may seek to explain why the child acted normally. *See State v. Dodson,* 452 N.W.2d 610, 612 (Iowa App.1989). The fact a child acted normally is not evidence of abuse.

■ The problem with this type of evidence is it may incorrectly be used by a factfinder as evidence of abuse. *Dodson,* 452 N.W.2d at 612. There is a very fine line between an opinion that is helpful to a jury and an opinion that merely conveys a conclusion concerning the defendant's guilt. *See State v. Myers,* 382 N.W.2d 91, 98 (Iowa 1986); *State v. Horton,* 231 N.W.2d 36, 38 (Iowa 1975).

We agree with defendant that portions of the opinions Opdebeeck gave relating to the sexual abuse accommodation syndrome would have been excluded had a proper objection been made. However, defendant has failed to show the necessary prejudice to justify reversal. The defendant's attorney may have wanted the testimony to show Opdebeeck's belief in the syndrome casts the doctor as a strong believer in children who allege sexual abuse and, despite her strong tendency to believe the allegation of a child, she did not conclude the child here had been sexually abused.

## COMMENTS ON INTERVIEW OF BOLEY

■ As to Opdebeeck's testimony on the interviewing technique of Katie Boley, Opdebeeck testified she had never seen or reviewed an interview conducted by Boley but she was not aware of any problems Boley might have in conducting interviews. She also testified she did not know how Boley conducts her interview though Boley was trained by the center where she is a director,

Opdebeeck assumed Boley did it pretty much like the interviewers at her center, but she did not know.

The State alleges this was proper cross-examination because Opdebeeck testified on direct examination as part of her medical examination of a victim she conducts an interview of the child and how the interview is conducted. Opdebeeck's answers were not a critique of Boley's interviewing techniques. She admitted she had no knowledge of the technique used. We find defendant has failed to show he was prejudiced by this cross-examination.

## COMMENTS ON UNDERWAGER'S TESTIMONY

Opdebeeck testified she was familiar with Underwager and knew he was involved in a group called, "Victims of Child Abuse Law" and she disagreed with a lot of his opinions although, she might agree with him on some basic principles. The State urges that defense attorney may have had a tactical reason for allowing Opdebeeck to testify she had disagreement with Underwager's opinions. We find defendant has failed to show prejudice on this issue.

We affirm.

**AFFIRMED.**

DONIELSON, C.J., concurs.

HABHAB, J., specially concurs.

HABHAB, Judge (specially concurring).

I concur in the result only.