# IN THE COURT OF APPEALS OF IOWA

No. 22-0698
Filed March 29, 2023

**STATE OF IOWA,**
   Plaintiff-Appellee,

**vs.**

**STONEY ROCK GIFFORD,**
   Defendant-Appellant.
_____

Appeal from the Iowa District Court for Webster County, Kurt L. Wilke (motion for bond reduction), Jennifer Miller (application for depositions), and Thomas J. Bice (fair-cross-section challenge and trial), Judges.

The defendant challenges the district court's denial of his fair-cross-section challenge and his requests to reduce his pre-trial bond and depose non-listed witnesses; he also alleges prosecutorial misconduct. **AFFIRMED.**

Francis Hurley, Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

A jury convicted Stoney Gifford of first-degree robbery, intimidation with a dangerous weapon with intent, going armed with intent, and possession of a firearm by a felon. Gifford appeals, claiming (1) the district court abused its discretion in denying his request to reduce his bond prior to trial; (2) he should have been allowed to depose eight members of law enforcement who were not listed as witnesses by the State; (3) the court wrongly denied his fair-cross-section challenge to the jury pool for underrepresentation of Hispanic potential jurors;[1] and (4) prosecutorial misconduct deprived him of his right to a fair trial.

**I. Discussion.**

**A. Request for Bond Reduction.**

In August 2020, the State filed a criminal complaint charging Gifford with first-degree robbery. A warrant issued for Gifford's arrest, and he was taken into custody pending trial. A $50,000 cash bond was required for his release. Gifford moved for bond review, asking the court to reduce his bond to $25,000 cash or surety. The State resisted. After a hearing in October, the district court denied Gifford's request.

Gifford challenges the denial, arguing the district court abused its discretion because he "had stable family ties and employment[ and] offered to submit to supervision." *See* Iowa Code § 811.2(2) (2020) (listing considerations to be taken

---

[1] Gifford has used "Latino" and "Hispanic" interchangeably in making his fair-cross-section claim. We consistently use "Hispanic" in this opinion. *See Hispanic*, Merriam-Webster, https://www.merriam-webster.com/dictionary/Hispanic (last visited Mar. 24, 2023) (listing one of the definitions of "Hispanic" as "of, relating to, or being a person of Latin American descent and especially of Cuban, Mexican, or Puerto Rican origin living in the U.S.").

into account when determining conditions of release). But, as the State points out, Gifford's challenge to the denial of his request to reduce his bond is now moot. *See State v. Briggs*, 666 N.W.2d 573, 576 (Iowa 2003) ("[The defendant's] arguments based on the propriety of her bail became moot after . . . [she] was found guilty. Any decision we issue relating to cash only bail will have no further effect on her at this point of time."). So, we will not consider it. *Id.* ("As a rule, we do not decide appeals in which 'the issue becomes nonexistent or academic and, consequently, no longer involves a justiciable controversy.'" (citation omitted)).

Insofar as Gifford raises a constitutional argument about our bail system more generally, he did not raise this issue to the district court, so it is not preserved for our review. *See In re Det. of Anderson*, 895 N.W.2d 131, 138 (Iowa 2017) ("In order for error to be preserved, the issue must be both raised [to] and decided by the district court."); *see also State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002) ("The rule of error preservation applies with equal strength to constitutional issues."). We do not consider this issue further.

### B. Depositions of Non-Witnesses.

Relying on Iowa Rule of Criminal Procedure 2.13(2), Gifford sought to depose eight police officers who were not listed as witnesses by the State; the rule provides:

> Whenever the interests of justice and the special circumstances of a case make necessary the taking of the testimony of a prospective witness not included in rule 2.13(1)[2] or 2.13(3),[3]

---

[2] Rule 2.13(1) allows a defendant to "depose all witnesses listed by the state on the indictment or information or notice of additional witnesses in the same manner and with like effect and with the same limitations as in civil actions except as otherwise provided by statute and these rules."

[3] Rule 2.13(3) deals with the defendant's witnesses; it requires:

for use at trial, the court may upon motion of a party and notice to the other parties order that the testimony of the witness be taken by deposition . . . . For purposes of this subsection, special circumstances shall be deemed to exist and the court shall order that depositions be taken only upon a showing of necessity arising from either of the following:

      (1) The information sought by way of deposition cannot adequately be obtained by a bill of particulars or voluntary statements.

      (2) Other just cause necessitating the taking of the deposition.

Iowa R. Crim. P. 2.13(2)(a).

In his application, Gifford described his need for the depositions as follows:

The witnesses identified below are law enforcement officers who arrived at the scene of the alleged crime or were involved in the investigation, interviewed witnesses, and allegedly searched for the suspect that is now alleged to be the Defendant. In reviewing discovery provided by the State, it appears that over fifty people were investigated, interviewed, or information derived from or about during the investigation of this matter. The officers sought had varying levels of involvement in said investigations, likely with each procuring and learning different aspects of the investigation.

The State resisted, claiming Gifford failed to meet his burden and that the State was still in the process of complying with a discovery request, which—when completed—would provide Gifford with "reports and/or body camera footage that will account for 6 of the 8 officer's involvement in the investigation."

At a hearing on the application, Gifford reiterated that he needed to depose the officers to find out what each one's "role in this investigation was, who they

---

At or before the time of the taking of a deposition by a defendant under rule 2.13(1) or 2.13(2), the defendant shall file a written list of the names and addresses of all witnesses expected to be called for the defense (except the defendant and surrebuttal witnesses), and the defendant shall have a continuing duty before and throughout trial promptly to disclose additional defense witnesses. Such witnesses shall be subject to being deposed by the state.

talked to, what was said to them, [which] would lead to other witnesses." The State responded,

> [D]efense counsel coming in here and saying we would like to talk to these people is [not] enough. There has to be a showing that the information that he can obtain would be pertinent and relevant to the case and not able to be found through any other mechanism. In this case the defense counsel hasn't reviewed body camera footage and reports. I certainly don't think it's fair to come in here and say he can't find that through any other mechanism.

Relying on *State v. Webb*, 309 N.W.2d 404 (Iowa 1981) and other cases, the court denied Gifford's motion.

Gifford challenges this ruling on appeal. He seeks to distinguish his case from *Webb*, arguing that while the defendant in *Webb* "merely speculated that the witnesses might have information that might support his alibi," he "set out detailed foundation for the specific information [he] was seeking and why it was needed and how it would prejudice him if he were denied." We review discovery rulings for an abuse of discretion. *Webb*, 309 N.W.2d at 413. "Error in the administration of discovery rules is not reversible absent a demonstration that the substantial rights of the defendant were prejudiced." *Id.* (citation omitted).

Gifford argues that discovery rules should be liberally construed, but "when construing our discovery rules and statutes in criminal cases, [our supreme court has] been scrupulous not to broaden discovery beyond the plain language of the rules or statutes." *State v. Rainsong*, 807 N.W.2d 283, 287 (Iowa 2011). And a defendant's broad claim that persons not listed by the State may have information to aid in his defense does not meet the standards of rule 2.13(2). *See id.*; *see also State v. Wagner*, 410 N.W.2d 207, 213 (Iowa 1987) ("A defendant who makes no showing the evidence hoped to be obtained will be material and favorable to his or

her defense has no right to compulsory process and has failed to demonstrate 'special circumstances' as required by [now rule 2.13(2)].").  Especially here, where Gifford had yet to complete discovery and had not reviewed the body camera footage and reports of the officers he claimed to need to depose.  *See* Iowa R. Crim. P. 2.13(2)(b) (allowing for depositions of unlisted individuals when just cause *necessitates* the taking of the deposition).  Further, Gifford did not renew his request for the depositions after receiving those discovery materials.

Plus, even if the district court should have allowed the depositions under rule 2.13(2), Gifford makes no argument how the alleged error prejudiced his substantial rights.  Receiving the remedy he requests—having his conviction set aside and a new trial granted—requires "a demonstration that" his "substantial rights . . . were prejudiced."  *Webb*, 309 N.W.2d at 413; *see also Wagner*, 410 N.W.2d at 213 (affirming district court when the defendant "list[ed] a number of persons who witnessed the uprising, [but] he point[ed] to nothing definitive in the record that suggests their testimony would be material or favorable to his defense. He . . . made no showing their testimony would not merely duplicate that of other witnesses.  Further, [he made] no claim regarding any prejudice that resulted from the court's denial of discovery, nor is any prejudice apparent from this record").

We cannot say the district court committed a reversible error in denying Gifford's request to depose the eight officers.

**C. Fair-Cross-Section Challenge.**

In the days leading up to his January 2022 criminal trial, Gifford, who is Native American, challenged the makeup of the jury pool.  *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a

speedy and public trial, by an impartial jury of the State and district wherein the crimes shall have been committed."); Iowa Const. art. I, § 10 (providing the right to "public trial by an impartial jury"); *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975) ("We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation."). Gifford asserted a fair-cross-section violation due to the alleged underrepresentation of Hispanic potential jurors.

The defendant has the burden to establish a prima facie violation of the fair-cross-section requirement, which requires showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *State v. Plain* (*Plain II*), 969 N.W.2d 293, 296 (Iowa 2022); *State v. Lilly* (*Lilly I*), 930 N.W.2d 293, 299 (Iowa 2019).

In his written challenge filed with the district court, as to the second prong, Gifford asserted: "Grace Zalenski has analyzed the jury pool for this jury trial. . . . Ms. Zalenski's findings are that the pool for this trial is statistically under representative of Latino/Hispanic Americans, with a Z-score of -1.4, meeting the one standard deviation threshold set in [*Lilly I*]." As to the third prong, he claimed,

> Zalenski's statistical analysis is sufficient to satisfy the third prong. As noted in her report, "By definition, if some degree of under-representation in a jury pool is not due to chance, it is due to systemic bias." Zalenski reviewed thirty-one jury pools from Webster County, Iowa using demographic reports for January 1, 2019 to January 4, 2022. "The probability of drawing 26 pools that are underrepresentative of the Hispanic American/Latine group, by random chance alone, is 0.0000000000002776%."

(Internal citations omitted.)

At a later evidentiary hearing on the issue, Gifford explained that Zalenski was not available to testify; the parties agreed her resumé, completed statistical analysis, and a transcript from a different case in which she explained how she does the math and what data she compares would be admitted as exhibits. Gifford also introduced Iowa's jury management policy from the state court administrator. In his argument, Gifford stated:

> We are representing the issues that the math alone is a systemic problem and that the jury process done by the State and the Clerk of Court here in Webster County . . . simply leads to an under-representation and that under-representation leads to not having a fair cross-section of the community.

The State called the Clerk of Court for Webster County; she testified about the processes used to summon potential jurors, what happens when people do not respond, the state-wide jury system, and how little the employees within the local clerk's office can impact that system.

In a written ruling, the district court denied Gifford's fair-cross-section challenge,[4] concluding Gifford failed to meet the third prong because "the matters objected to by [him] fall within the general category of 'run of the mill' matters."

---

[4] In its ruling, the district court wrongly concluded that a defendant must be a member of the distinctive group of which the defendant is claiming underrepresentation to raise a fair-cross-section challenge under the Iowa Constitution. This misunderstanding seems to stem from our supreme court's misstatement of the law in *State v. Plain* (*Plain I*), 898 N.W.2d 801 (Iowa 2017). In *Plain I*, the supreme court stated, "Under the first *Duren* prong, a defendant must establish membership in a distinctive group under community standards." 898 N.W.2d at 822. But *Duren* itself explicitly makes clear that membership is not a requirement, stating, "A criminal defendant has standing to challenge exclusion resulting in a violation of the fair-cross-section requirement, whether or not he is a member of the excluded class." 439 U.S. at 359 n.1; *see also Taylor*, 439 U.S. at

We review constitutional issues de novo. *Plain I*, 898 N.W.2d at 810. Failing any one prong is sufficient to defeat a defendant's fair-cross-section claim. *Plain II*, 969 N.W.2d at 297 ("We will begin our analysis on the third prong, since an inability to establish any one of the three *Duren/Plain* elements is fatal to a defendant's fair-cross-section challenge.").

We begin our review at the third prong—considering whether Gifford established any underrepresentation was due to systematic exclusion of the group in the jury-selection process. Like he did to the district court, Gifford broadly claims any underrepresentation must be systemic due to the "small chance that the underrepresentation could be by chance." In other words, Gifford uses the statistical evidence needed to prove the second prong as a fait accompli of proving the third. But these are separate elements; the mere existence of

---

526 (rejecting Louisiana's claim that the male defendant could not object to the exclusion of women from his jury because "there is no rule that claims such as [the defendant] presents may be made only by those defendants who are members of the group excluded from jury service"). Moreover, *Plain I* does not involve a challenge under the Iowa Constitution. *See Plain II*, 969 N.W.2d at 296 ("In *Plain I*, we held that Plain hadn't raised a claim under the Iowa Constitution in the district court.").

To clarify, Gifford may properly raise a fair-cross-section challenge under both the Iowa and United States Constitutions regarding the alleged underrepresentation of Hispanic potential jurors even though he is Native American and not Hispanic. The distinction between the state and federal claims is the threshold standard deviations that must be shown to obtain relief. Under the Iowa Constitution, one standard deviation is sufficient under the second prong. *See Lilly I*, 930 N.W.2d at 304 (holding, under article I, section 10 of the Iowa Constitution, a defendant establishes the underrepresentation prong by showing that the representation of a distinctive group in the jury pool falls below the representation in the eligible juror population by more than one standard deviation). But to succeed on a claim under the Sixth Amendment, the defendant must establish at least two standard deviations. *See State v. Veal*, 930 N.W.2d 319, 329 (Iowa 2019) (recognizing the United States Supreme Court "seemingly endorsed two to three standard deviations as an appropriate threshold").

underrepresentation does not establish the causation element required for the third prong. *See Lilly II*, 969 N.W.2d at 797 ("[T]o establish the third prong a defendant must prove that the underrepresentation resulted from a particular feature (or features) of the jury selection system. The defendant, in other words, 'must tie the disparity to a particular practice' and show that the practice caused the systematic exclusion of the distinctive group in the jury selection process.'" (citations omitted)). Rather,

> [L]itigants alleging a violation of the fair cross section requirement . . . still have to demonstrate that the underrepresentation was the result of the court's failure to practice effective jury system management. This [will] almost always require expert testimony concerning the precise point of the juror summoning and qualification process in which members of distinctive groups were excluded from the jury pool and a plausible explanation of how the operation of the jury system resulted in their exclusion. Mere speculation about the possible causes of underrepresentation will not substitute for a credible showing of evidence supporting those allegations.

*Lilly I*, 930 N.W.2d at 307 (quoting Paula Hannaford-Agor, *Systemic Negligence in Jury Operations: Why the Definition of Systematic Exclusion in Fair Cross Section Claims Must be Expanded*, 59 Drake L. Rev. 761, 790–91 (2011)).

Because Gifford failed to establish the third prong of the prima facie challenge, we agree with the district court that his fair-cross-section claims fail.

**D. Alleged Prosecutorial Misconduct.**

As a final point, Gifford alleges several instances of prosecutorial misconduct, which he claims deprived him of his right to a fair trial. In his appellate brief, Gifford admits he did not lodge contemporaneous objections to any of the conduct he now challenges; he first raised the issue in a post-trial motion. Gifford's late challenge failed to preserve error for our review. *See State v. Seltzer*, 288

N.W.2d 557, 559 (Iowa 1980) ("Objections should be raised at the earliest time at which error became apparent in order to properly preserve error. Motion for new trial ordinarily is not sufficient to preserve error where proper objections were not made at trial." (internal citation omitted)); *see also Mitchell v. Cedar Rapids Comm. Sch. Dist.*, 832 N.W.2d 689, 695 (Iowa 2013) ("It is well-settled that a party fails to preserve error on new arguments or theories raised for the first time in a posttrial motion.").

We do not consider this issue further.

## II. Conclusion.

Because Gifford's challenge to the district court's denial of his request for bond reduction is moot and he failed to preserve error on his allegations of prosecutorial misconduct, we do not consider either claim. We find no reversible error in the court's denial of his application to depose eight non-listed witnesses or its denial of his fair-cross-section challenge. We affirm.

**AFFIRMED.**