**STATE of Iowa, Appellee,**

v.

**Maurice Edwin HOBSON, Appellant.**

**No. 62526.**

Supreme Court of Iowa.

Oct. 17, 1979.

John L. Butler of Lundy, Butler & Lundy, Eldora, for appellant.

Thomas J. Miller, Atty. Gen., and Selwyn L. Dallyn, Asst. Atty. Gen., for appellee.

Considered by REES, P. J., and HARRIS, McCORMICK, ALLBEE and McGIVERIN, JJ.

McCORMICK, Justice.

Defendant appeals his conviction by jury and sentence for theft in the third degree in violation of § 714.2(3), The Code. He challenges various trial court proceedings and also attacks the sufficiency of the evidence. We affirm the trial court.

The charge arose out of the alleged theft of aluminum truck bed stakes from a grain company's semi-trailer truck parked at the Cordes Tire Service in Iowa Falls in the early morning of June 23, 1978.

The questions raised by defendant concern the authority of an assistant attorney general to sign the trial information, the excuse of fourteen members of the venire during the impanelling of the jury, the participation of the county attorney in the prosecution, and the sufficiency of the evidence for submission of the case to the jury.

*I. The trial information.* An assistant attorney general, rather than the county attorney or his assistant, signed and filed the trial information. Defendant contends the trial court erred in failing to dismiss the information because the assistant attorney general lacked authority to sign and file it. However, we find defendant failed on two grounds to preserve error on this contention.

First, his motion to dismiss the information on this basis was filed too late. Defenses and objections based on defects in the information must be raised before trial. Iowa R.Crim.P. 10(2)(b). Motions raising such issues must be made within thirty days after arraignment or prior to impanelment of the jury, whichever is sooner, unless the time is extended by the court for good cause. Iowa R.Crim.P. 10(4). Here the motion was not filed until the thirty-first day after defendant's arraignment, and the late filing was not excused. Defendant's objection to the information was thus waived. Iowa R.Crim.P. 10(3).

Second, the objection was also expressly waived. Defense counsel orally notified the trial court the motion was withdrawn before obtaining a ruling on it.

Moreover, the objection is subject to waiver because failure to have an authorized person sign and file the trial information does not affect subject-matter jurisdiction. *See State v. Fortunski*, 200 Iowa 406, 204 N.W. 401 (1925).

We do not intimate any view on the merits of the motion. On that issue, see *State v. Brandt*, 253 N.W.2d 253, 262 (Iowa 1977); *State v. Blyth*, 226 N.W.2d 250, 258–60 (Iowa 1975); §§ 13.2(2), 801.4(8), The Code 1979; Iowa R.Crim.P. 5(1).

*II. Impanelling the Jury.* The parties agreed to select a trial jury from a panel of twenty-seven jurors. Each side was to strike seven names, leaving a jury of twelve with one alternate.

This procedure was followed, but defendant contends the trial court erred in excusing fourteen members of the venire for inadequate reasons. Six persons were excused after being called for the panel because of employment hardship, and the other eight persons were let go from the venire before the panel was refilled because they had been excused for the month of September 1978 by another judge and the court believed the trial might last into September.

Defendant contends the trial court erred in excusing the jurors and he was prejudiced because he was thereby deprived of a jury selected from a cross section of the community. We find no merit in either contention.

No record was made of the bases for individual excuses, so we have no means of assessing the strength of the showings made. Under Code § 607.3, made applicable to criminal trials by Iowa R.Crim.P. 17(1), a person may be excused from jury service "when his own interests or those of the public will be materially injured by his attendance . . . ." This is the standard which the trial court relied on, and we have no reason to believe it was not followed.

We hold that no abuse of discretion in excusing jurors has been shown. *See State v. Critelli*, 237 Iowa 1271, 1281, 24 N.W.2d 113, 118 (1946). In so holding, we are mindful that persons should not be excused from their public responsibility of jury service for mere inconvenience, distaste for service, or even the threat of some loss of income. *Watson v. Charlton*, 243 Iowa 80, 93–94, 50 N.W.2d 605, 612–13 (1952). However, this principle was not violated in the present case.

In any event, no prejudice was demonstrated. A defendant is denied his right to a fair and impartial jury if systematic and intentional exclusion of an identifiable eligible group prevents the jury from being representative of the community. *State v. Knutson*, 220 N.W.2d 575, 577 (Iowa 1974). A jury may represent a fair cross section of the community even when certain classes of persons are exempted from service. *State v. Brewer*, 247 N.W.2d 205, 209–10 (Iowa 1976). In the present case, defendant wholly failed to show either

the systematic and intentional exclusion of an identifiable eligible group or the absence of a fairly representative jury panel.

Thus we find neither error nor prejudice.

*III. The county attorney's participation.* This case was prosecuted by an assistant attorney general and the Hardin County attorney, Gordon Greta. An assistant county attorney, Jon Heitland, disqualified himself because he represented the defendant in an unrelated civil case at the time the charge was filed. Heitland withdrew from the civil case before this case was tried.

Defendant now alleges he was denied a fair trial because of the failure of county attorney Greta to disqualify himself as well. This allegation was not made in the trial court and cannot be made for the first time here. By failing to object to Greta's participation in the trial, defendant waived his right to complain about it. We do not reach the merits of his present claim.

*IV. Sufficiency of the evidence.* Defendant contends the trial court erred in overruling his motion for directed verdict at the close of the evidence based on the insufficiency of the State's evidence to permit the jury to find the stakes had actually been stolen. He also contends the court erred in failing to given an instruction which he requested on this subject.

The evidence included testimony concerning admissions by defendant which would permit the jury to infer he stole the stakes. Defendant was discovered at the scene of the alleged theft by officers Olmstead and Stoner of the Iowa Falls police department at approximately 3:00 a. m. on the date involved. They observed him standing beside a flatbed trailer parked on the Cordes Tire Service premises. They asked him what he was doing there, and he said he was looking at tires. The officers saw aluminum stakes standing upright around part of the flatbed of the truck. The testimony of Olmstead included the following:

Q. Anything further, then? A. I then asked Maurice if he had any idea what those stakes—those upright stakes, which appeared to be fairly new, would cost. I also inquired as to what the stakes and the side boards would be used for in a flatbed trailer, and Maurice advised me that they would be used for hauling grain, primarily.

Q. Was he able to give you an estimate to the value? A. Yes, sir.

Q. What did he say? A. Approximately $25.

Q. A piece? A. Yes.

Q. All right. What else was said? A. He was standing there, then, and he made the statement that if we leave for a while, he would put back everything that he had taken.

Q. Had you, previous to that time, accused him of taking anything? A. No, sir.

Q. What, if anything, did you reply? A. I replied what he was talking about, I didn't have any idea what he was talking about.

Q. Go on; what's the rest of the conversation? A. Then he replied that he couldn't bullshit us guys, that he had taken some stuff. Again, I asked him what he was talking about, and he told me that he had taken some stakes off of the truck.

Q. Was there any more conversation? A. He made the statement that he felt bad because it was us that caught—that had observed him; money was hard; he didn't have the money to buy these stakes, and he needed them.

Stoner testified to the same conversation as follows:

Q. All right, then, go on and relate the conversation. A. The talk turned to his trailer a little bit. He said he was going to haul grain in his trailer. He said he could probably haul grain from the Co-op down in Eldora. He said something about he couldn't haul steel on it because—I'm not completely familiar with a trailer. He said some of the rods underneath it were rusting and it couldn't be used to haul steel, so he was going to make a grain trailer out of it. Sergeant Olmstead then was shining his flashlight—not his flashlight; the spot-

light of the patrol car—on the trailer in front of us, which Maurice had been standing by. And I believe Sergeant Olmstead asked him what that would be used for, and Maurice said it was being boarded in to make a grain trailer out of it, to haul grain. Sergeant Olmstead made the statement as to the stakes on the trailer look new and wondered what they'd cost, and Maurice said that they cost about $25 a piece.

Q. Any further conversation? A. The conversation dropped off right then for a little bit. The next thing Maurice said, he says, "I'll make a deal with you guys. You leave for a while, and I'll put back everything I took." And Gary said, "You what?" And he said, "Hey, I can't bullshit you guys. I've got some stuff." And Gary again said, "You what?" He said, "You know what I'm talking about." He says, "I've got some of those stakes."

Defendant was a Hardin County deputy sheriff, and this factor induced the officers to accede to his request that they leave so he could put the stakes back. They testified he told them he would lay the stakes on the flatbed rather than reinsert them because putting them back in the brackets would be too noisy. The officers left but returned to the scene approximately twenty minutes later. Defendant had departed. The officers testified that when they returned stakes were lying on the flatbed which had not been there on the prior occasion.

In attacking the sufficiency of evidence for jury consideration defendant asserts it was necessary for the State to show how many stakes were on the truck before the alleged theft. He also argues the State had no evidence other than his alleged admissions to prove any stakes were stolen. We do not agree. The alleged admissions were direct evidence of the theft, and the sufficiency of corroborative evidence was correctly submitted for the jury to decide.

Under Iowa R.Crim.P. 20(4), the confession of a defendant, unless made in open court, will not warrant a conviction, "unless accompanied with other proof that the defendant committed the offense." This is a change from prior law, which only required that there be additional evidence "that the offense was committed." § 782.7, The Code 1977. The rule requiring corroboration of confessions is now similar to the rule requiring corroboration of accomplice testimony. See Iowa R.Crim.P. 20(3); J. Yeager & R. Carlson, 4 Iowa Practice: Criminal Law and Procedure § 1161, at 272 (1979) ("Confessions and accomplice testimony continue to require corroboration, but the confession rule has been tightened and sharpened in the new revision." (footnote omitted)).

 Assuming, without deciding, that defendant's admissions amounted to a confession, we believe the new rule was satisfied in the present case. The existence of corroborative evidence is an issue for the court, and its sufficiency is ordinarily for the jury. See State v. Vesey, 241 N.W.2d 888, 890 (Iowa 1976). The evidence that stakes appeared on the flatbed between the two visits of the officers to the scene is corroborative of defendant's statements that he took the stakes but would return them if given a chance to do so. Further, this evidence tended to show defendant committed the offense. Thus the trial court correctly held that defendant's alleged admissions were accompanied by other proof of his guilt. The court was right in finding the evidence as a whole was sufficient for jury consideration and in letting the jury determine the sufficiency of the corroborative evidence.

 Defendant contends the trial court erred in refusing to give his requested instruction that the corpus delicti of the crime could not be established by his confession. However, the correct concept is that a confession will not warrant a conviction unless accompanied by other proof that the defendant committed the offense, and the jury was informed of this principle by the court's instructions. Defendant's requested instruction was at best incomplete. To the extent it was accurate, its substance was adequately covered by the instructions which were given.

We hold that the court did not err in overruling defendant's motion to direct a verdict or in refusing to give defendant's requested instruction.

AFFIRMED.