STATE of Iowa, Plaintiff–Appellee,

v.

Samuel Jerome ORIGER,
Defendant–Appellant.

No. 86–800.

Court of Appeals of Iowa.

Nov. 30, 1987.

Charles Harrington, Appellate Defender, and Michael J. Laughlin, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff and James Ramey, Asst. Attys. Gen., and Ted Hovda, Co. Atty., for plaintiff-appellee.

Considered by OXBERGER, C.J., and DONIELSON, SCHLEGEL, HAYDEN, and SACKETT, JJ.

SACKETT, Judge.

The sole issue in this appeal is whether there is substantial evidence to support the jury's verdict defendant is guilty of the first-degree murders of Bradley Robb Johnson (Robb) and Jennifer Johnson. We determine there is sufficient evidence to support defendant's conviction of the murder of Robb Johnson and affirm that conviction. We determine there is insufficient evidence to support defendant's conviction of the murder of Jennifer Johnson and reverse that conviction.

Robb and Jennifer Johnson were husband and wife. They lived together in a farm home south of Forest City, Iowa. Robb dealt in cocaine. He supplied cocaine to defendant and other persons. The Johnsons had a series of friends and acquaintances who visited and often stayed in their home. Jennifer's body was found on the weekend of February 9, 1985. On that weekend, Robb was concerned about collecting money to pay his cocaine suppliers.

Jennifer and Robb Johnson were alive and together in their rural home about suppertime on Saturday, February 9. The pathologist who examined both bodies determined from an examination of their digestive systems, if Robb and Jennifer had eaten the same meal at about the same time, Robb died before Jennifer. He did not say how long before. The pathologist found noodles and vegetables in both stomachs to be similar. He estimated Jennifer had eaten one to one-and-one-half but not more than two hours prior to her death.

Jennifer Johnson's nude body was found on the bed in her home on Sunday morning, February 10, 1985. Jennifer had died quickly as the result of multiple stab wounds. The wounds apparently had been inflicted in her home. Over a month later on March 14, 1985, Robb Johnson's fully clothed and partly decomposed body was found in a county road ditch six-and-one-half miles from the Johnson residence. Robb died as a result of gunshot wounds. It appeared Robb had been shot at some other location and his body put in the ditch. No murder weapons were found.

On December 24, 1985, defendant was charged in Hancock County with both murders. Defendant was tried to a jury and convicted of first-degree murder in both instances. Defendant appeals from each conviction contending there was not substantial evidence to support the jury's determination he committed either crime.

█ In determining the sufficiency of evidence to support a guilty verdict we consider the evidence in the light most favorable to the State. *State v. Klindt,* 389 N.W.2d 670, 676 (Iowa 1986); *State v. Blair,* 347 N.W.2d 416, 418–19 (Iowa 1984). Substantial evidence means evidence that would convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *Blair,* 347 N.W.2d at 419. Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). Whether the evi-

dence is direct or circumstantial, however, it must raise a fair inference of guilt; it must do more than create speculation, suspicion, or conjecture. *Blair,* 347 N.W.2d at 421.

The State is required to prove beyond a reasonable doubt the elements of first-degree murder. *Id.; State v. Aldape,* 307 N.W.2d 32, 39 (Iowa 1981). The State must show that the defendant killed the victim with malice aforethought and in a willful, deliberate, and premeditated manner. *See* Iowa Code §§ 707.1, .2(1). Deliberation and premeditation may be shown by circumstantial evidence in one or more of three ways: (1) evidence of planning activity of the defendant which was directed toward the killing; (2) evidence of motive which might be inferred from entire relationships between defendant and victim; and (3) evidence regarding the nature of the killing. *Blair,* 347 N.W.2d at 421. Persuasive evidence of premeditation and deliberation, however, is the violent nature of the victim's death. *Id.* The use of a deadly weapon accompanied by an opportunity to deliberate is evidence of malice, deliberation, premeditation and intent to kill. *Id.* (citations omitted).

Jennifer was stabbed more than five times in the back and neck. Robb was shot four times in the head and back at close range. The physical facts of the murder would provide substantial evidence to support a finding of first-degree murder. *See id.* The much more difficult question is whether there is substantial evidence to support the jury's finding defendant was the perpetrator of the crimes.

## I.

We first look to the direct evidence tying defendant to Robb Johnson's death.

Defendant made admissions to two persons about shooting Robb. Dean Youngwirth testified about statements made by defendant before Robb's body was found.

Q. And what did [defendant] tell you the secret was? A. The secret was the killings in Forest City. Robb Johnson and Jennifer came up right off the bat

and he looked me straight in the eye and said that he shot Robb.

Q. Just tell the jury the conversation; tell the jury what Sam told you that night. A. My next question to Sam was after he says, yeah, I shot Robb. He said, Robb came in gun crazy and I had no choice, Dean, but to shoot him. What did you do with his body? He says, well, it won't be found for a long time. That's all I can tell you, and I says, well, then, who killed Jennifer, and he says, I don't know.

Michael Hudson also testified about statements made by defendant.

Q. Well, what started the conversation about Jennifer and Robb Johnson's death? A. I believe he brought it up.
Q. And then what did he tell you? A. He said that he went to their house, found the guy outside and it was a mess.
Q. Now, what did Mr. Origer tell you he did while there at the Johnson house that night? A. He said he found the man outside, put him out of his misery.
Q. Did he tell you how he put him out of his misery? A. Yes, he said he shot him.
Q. Did he say where he shot him, what part of the body? A. In the head.

The defendant's alleged admissions, which we may assume amounted to a confession, *see State v. Hobson,* 284 N.W. 2d 239, 243 (Iowa 1979), were the only direct evidence of defendant's involvement with Robb's death.

Iowa Rule of Criminal Procedure 20(4) provides:

The confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the defendant committed the offense.

This is a change from prior law which only required there be additional evidence the offense was committed by *someone. See* Iowa Code § 782.7 (1977); *Hobson,* 284 N.W.2d at 243. The rules requiring corroboration of confessions is similar to the rule requiring corroboration of accomplice testimony. *Hobson,* 284 N.W.2d at 243. Corroboration need not be strong nor need it

go to the whole of the case so long as it confirms some material fact connecting the defendant with the crime. *State v. White*, 319 N.W.2d 213, 214 (Iowa 1982). The existence of corroborative evidence is an issue for the court, and its sufficiency is ordinarily for the jury. *Id.*

■ Defendant was allegedly under the influence of drugs or alcohol when he made the admissions to Youngwirth and Hudson. This fact goes to the weight of the evidence rather than to its admissibility. *See State v. Wilson*, 264 N.W.2d 614, 614–15 (Iowa 1978); *State v. Jackson*, 387 N.W.2d 623, 628 (Iowa App.1986).

We look at the balance of the evidence to determine if it corroborates some material part of defendant's admissions. We determine it does. The statement defendant made to Youngwirth indicates Robb was killed with a gun and the body would not be found for some time. The statement was made before the police found Robb's body. The facts Robb had been shot and the body was not found until a month later, because it was in an out-of-the-way ditch, support a material part of defendant's admissions. We therefore consider the defendant's admissions coupled with the supporting evidence to be substantial evidence to support the verdict.

In making this determination we have considered the following circumstantial evidence connecting defendant to the crime.

1. Defendant knew Robb Johnson.
2. Robb had been in defendant's home on February 9, 1985.
3. There was a one-minute phone call at 10:22 a.m. February 8 from the Johnson residence to defendant's residence.
4. Defendant was selling cocaine for Robb.
5. Crystal Diehl testified she saw a car with four round headlights pull in her driveway between 6:00 and 9 p.m. on Saturday, February 9, 1985. It headed south. The car slowed or stopped for a short time on the east side of the road south of her house. Her husband identified the taillights as rectangular. Robb's body was eventually found south of the Diehl house. Defendant had a car with four round headlights and rectangular taillights.
6. Defendant knew the Diehls and was familiar with the area where Robb's body was found.
7. Gunpowder residue was found on the passenger's side of defendant's car.
8. There was cash in the Johnson house Saturday afternoon. Defendant had cash to pay bills after the weekend Jennifer's body was found.

There remain many mysteries. Defendant argues and we note there is no evidence placing defendant at the Johnson residence, no evidence tying defendant to the home, no fingerprints, etc., and no evidence of the percentage of cars having round headlights and rectangular taillights. Neither murder weapon was found nor identified. There is no evidence of the type of knife or kind of gun used. The State's contention is Robb was shot in defendant's car. Other than gunpowder residue, there is no evidence a person was shot in defendant's car nor evidence a body was transported therein. Despite a thorough examination, there was no blood or other evidence found in defendant's car.

Defendant argues he has established a strong alibi for the timeframe when the murders allegedly transpired. Defendant's mother, father, brother and wife testified defendant and his wife went to his parent's home in Estherville, Iowa, arriving about 7:00 p.m. Saturday evening. Estherville is seventy miles from Forest City. Other defense witnesses also testified they had been "road hunting" from defendant's car before. While this evidence if believed would substantiate defendant's alibi and explain the gunpowder residue, the jury is at liberty to believe or disbelieve the testimony of witnesses and give such weight to the evidence as in its judgment the evidence is entitled to receive. *Blair*, 347 N.W.2d at 420.

Considering all of defendant's arguments, we find substantial evidence in the record to support his conviction of the mur-

der of Robb. *See Klindt,* 389 N.W.2d at 676.

## II.

■■■ We now turn to the more difficult task of determining whether there is substantial evidence defendant murdered Jennifer Johnson. To be substantial the evidence must rise above suspicion and conjecture. *State v. TeBockhorst,* 305 N.W.2d 705, 709 (Iowa 1981). The evidence must establish a fair inference the defendant was the perpetrator of the killings. *Blair,* 347 N.W.2d at 422. The inference must rise above mere speculation, suspicion or conjecture. *Id.*

Because decedents were husband and wife, lived in the same household, were last seen alive together and there is evidence they died close to the same time, we consider the evidence previously discussed connecting defendant to the murder of Robb. However, not only is there no admission by defendant that he killed Jennifer, in admitting he shot Robb, defendant made it clear he did not kill Jennifer. The only additional circumstantial evidence is Jennifer was killed with an unidentified knife and defendant sometimes kept a buckknife in his car. This evidence standing alone is not sufficient.

The State argues because there is evidence Robb and Jennifer were killed at the same time, there is a fair inference the person who killed one killed both. The State argues the jury could find:

1) Jennifer Johnson was planning to stay home to do laundry on the night of Saturday, February 9;

2) There was no housekey on Robb Johnson's body when it was found; and

3) Defendant kept a buckknife in his car.

The State argues from those facts the jury could infer:

1) After killing Robb and dumping his body in a roadside ditch, defendant took Robb's housekey from his body;

2) Defendant returned to the Johnson home and either let himself in or was let in by Jennifer;

3) Defendant stabbed Jennifer to death, perhaps using the buckknife he carried in his car; and,

4) Defendant killed Jennifer out of fear she would be able to connect him to Robb's murder if she remained alive.

In examining this argument we look at the timeframe the evidence establishes. We consider all the evidence and not just the evidence supporting the verdict. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984); *Blair,* 347 N.W.2d at 419.

| STATE'S EVIDENCE | DEFENDANT'S EVIDENCE |
|---|---|
| | 11:00 a.m.—Jennings with Robb at Johnson residence. |
| | 12:00 noon—Robb and Jennifer came to defendant's residence. |
| 1:00 p.m.—Humphrey and girlfriend leave Johnson home. | |
| | 1:30 p.m.—Skyrme saw Robb and Jennifer at home. |
| | 4:00—5:00 p.m.—John Johnson stopped at Johnson residence and found Robb and Jennifer eating supper. |
| 5:30 p.m.—Heimdal at Johnson home. Saw Robb and Jennifer. | |
| 6:00–9:00 p.m.—Car with round headlights seen near body scene 6-1/2 miles from Johnson house. | |
| | 6:30 p.m.—Holly Stykel called and talked to Robb about babysitting. Told not to come to house. |

6:40 p.m.—Call from Johnson residence to Mason City.

6:40 p.m.—Robb called Billy Nichols in Mason City.

7:10 p.m.—Marjorie Hall drove by Johnson home—saw four cars and house was all lit up.

7:15 p.m.—Call answered at Johnson residence by unidentified man not Robb.

7:30 p.m.—Myrna Pinneke drove by Johnson home—saw two cars—neither looked like defendant's.

8:30 p.m.—Humphrey and girlfriend return to Johnson home—house locked, lights and TV on—no one home.

8:30 p.m.—Skyrme and Faber go to Johnson home. Downstairs light on —no one home. Faber thought he saw a shadow behind kitchen drape.

8:30–10:30 p.m.— Time coroner estimates Jennifer died—one to two hours after eating. Robb died sometime before Jennifer.

The evidence does not raise a fair inference the murders were committed by one man alone. The two murders were allegedly committed close to the same time. The bodies were found in different places; the victims were killed with different weapons. None of this evidence suggests the victims were killed by one man. Considering the timeframe established by the State's evidence, we find the State's theory that the person who killed Robb also killed Jennifer is merely speculation. *See Blair*, 347 N.W.2d at 422. We consider the evidence regarding Jennifer's murder in the light most favorable to the State, coupled with the fact there is substantial evidence of Robb's murder *only* because of defendant's admission which included a denial that he murdered Jennifer. We find the evidence is not sufficient to provide substantial evidence to support defendant's conviction of the murder of Jennifer.

We reverse defendant's conviction for the murder of Jennifer Johnson.

AFFIRMED IN PART AND REVERSED IN PART.

All Judges concur except OXBERGER, C.J., who dissents.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent. I do not find any material facts connecting the defendant with the crimes. The majority cites eight circumstances they contend connect the defendant to the crimes. I shall discuss each of them.

1. I do not find the fact that the defendant knew the victim to be probative of any material fact connecting the defendant to the crime. Whether one is a stranger or acquaintance of the victim is not in and of itself significant.

2. I do not find the fact that the victim had been at the defendant's home on the day of the murder probative of any material fact connecting the defendant to the crime.

3. I do not find the fact there was a one minute phone call at 10:22 a.m. the day before the murder from the victim's residence to the defendant's residence to be probative of any material fact connecting the defendant to the crime.

4. I do not find the fact the defendant was selling cocaine for the victim to be probative of any material fact connecting the defendant to the crime of murder.

5. I do not find the fact that the Diehls saw a car in the vicinity where the victim's body was found at about the time the murders were committed to be probative of any material fact connecting defendant to the crime. It is a common observation that all headlights of vehicles at night at a distance of 20 feet or more look round. Furthermore, no evidence was offered to show the statistical significance of a vehicle having

round headlights. There was insufficient identification of the vehicle observed by the Diehls to connect it to the defendant.

6. I do not find the fact the defendant knew the Diehls and was familiar with the area where the victim's body was found to be probative of any material fact connecting the defendant to the crime.

7. I do not find the fact gunpowder residue was found on the passenger's side of defendant's car to be probative of any material fact connecting defendant to the crime. The State's expert witness testified the residue could remain on the upholstery for 10–15 years. There is no evidence indicating the victim was shot from a vehicle. The medical examiner said the two back wounds were caused by shots at a very close range, maybe an inch or two. There was no evidence of blood or tissue on defendant's car.

8. I do not find the fact there was cash in the Johnson house the day of the murder and the fact the defendant had cash to pay bills after the murders to be probative of any material fact connecting the defendant to the crime. There was no evidence that the defendant's money was in the same amount as the victim's or similar denominations. The defendant was a drug dealer and a sum of otherwise unexplained cash would not be unusual.

There are two other facts that should be discussed. Once the defendant was quoted as saying that he shot Mr. Johnson in the head. The victim was found shot in the head. I do not find this fact statistically significant. The number of murder victims killed by shots to the head are many. There is nothing significant about this type of murder that defendant's statement is significantly corroborated by the happenstance of the actual murder.

The second fact is the defendant is quoted as saying that Mr. Johnson's body would not be found for some time. The body was found lying in a ditch and was not found until a month later. Although this fact is more significant, I do not find it sufficiently significant to be corroborative of a material fact connecting the defendant to the crime.

Reviewing the ten circumstances cited by the majority, I do not find collectively they connect in any significant manner the defendant to the crime.

I would reverse the conviction of the defendant for the murder of Mr. Johnson.