**IN THE COURT OF APPEALS OF IOWA**

No. 14-1480
Filed December 23, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TERRY DANIELS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

A defendant appeals his conviction and sentence after a jury found him guilty of possession with intent to deliver a controlled substance as a second offender. **AFFIRMED.**

Drew H. Kouris, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Jean C. Pettinger, Assistant Attorneys General, for appellee.

Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Terry Daniels appeals his convictions for possession, or conspiracy to possess, more than fifty grams of cocaine base with intent to deliver and failure to possess a drug tax stamp, in violation of Iowa Code sections 124.401(1)(a)(3) and 453B.12 (2013). He also admitted to being a second offender for the purposes of the sentencing enhancement in section 124.411. On appeal, he claims there was insufficient evidence to convict him of either offense due to the lack of corroboration of his confession to the investigating officers. In addition, Terry claims his counsel provided ineffective assistance in a number of respects and the cumulative effect of these errors resulted in a fundamentally unfair trial. Finally, he claims his sentence should be vacated and the case remanded for resentencing because the court considered unproven offenses and his sentence of ninety years is grossly disproportionate to his offense.

**I. Background Facts and Proceedings.**

Waterloo police officers were investigating the distribution of crack cocaine, and they received information that a quantity of the drug would be arriving by bus from Chicago on January 6, 2013. Surveillance was set up in several locations, including the bus terminal. Officers observed Derrick Daniels get off the bus from Chicago with a black duffel bag. He entered a vehicle driven by his cousin, Latasha Daniels. The car was subsequently pulled over, and plastic bags containing approximately sixty-nine grams of crack cocaine were located in the black duffle bag.

Officers also had two residential addresses under surveillance at the time. Prior to Derrick arriving on the bus, police observed Latasha leave a home located at 1223 Mulberry. Shortly after Derrick was picked up by Latasha at the bus station, police observed the defendant, Terry Daniels, leave his residence at 868 Fowler along with his long-term girlfriend, Mary Frye, and a unknown male, and drive in the direction of 1223 Mulberry. His vehicle was also stopped, and officers returned to the Fowler address with Mary to execute a search warrant.

At the Fowler residence, police located a receipt for a money transfer from Mary to Derrick and a car rental agreement. One of the officers testified it is common to find car rental agreements during narcotics investigations as drug traffickers will use rental cars in order to conceal their identity from officers. Traffickers will also often use the name and identity of one of their customers in order to further conceal their identity. The car rental agreement found at the Fowler residence listed the name of an individual that the officer knew to be a crack-cocaine user. Officers located a letter addressed to Latasha, Terry's daughter, with the Fowler address along with a letter addressed to Terry. The officers also located a box of sandwich baggies in the kitchen and a receipt for a money gram from Latasha. A canine officer alerted to a nightstand in the upstairs bedroom, though no narcotics were found.

Officers also executed a search warrant at the Mulberry residence. Officers found two digital scales, razor blades, and sandwich baggies, all indicating drugs were weighed and packaged into individual units for resale in the residence. A prescription pill bottle with Derrick's name on it was located in a

shoe in a closet. Mail containing Latasha's name with the Mulberry residence address and the Fowler address was also located in the Mulberry home.

At the police station, Officer Nicholas Berry interviewed Terry, who told the officer he had a source in Chicago supplying him with crack cocaine.[1] Terry admitted the crack cocaine Derrick and Latasha were caught with was the result of an arrangement he had made with his source in Chicago. He told Officer Berry he was paying $1300 per ounce and receiving two ounces at a time, three times a month. Officer Berry testified that one ounce of crack cocaine is a little more than 28 grams, making the total amount of crack cocaine seized that day equal to approximately two and one-half ounces. Officer Berry testified the amount of cocaine base discovered in the vehicle was consistent with distribution and not consistent with personal use. Another officer also testified Terry gave the Mulberry address as his own when he was booked into jail.

In his defense at trial, Terry called Derrick to testify. Derrick stated Terry had nothing to do with the drugs found in his possession on January 6. While Derrick testified he took full responsibility for the drugs, on cross-examination Derrick also stated he was "shocked" when the police officer removed the drugs from the duffle bag. While he was carrying the bag, he told police it did not belong to him and pointed out in his testimony on cross-examination that the bag contained clothing that was not his and contained Latasha's wallet and identification. However, he ultimately admitted to knowing the drugs were in the duffle bag. He also admitted to owning the digital scales found during the search

---

[1] The recording system in the interview room where Officer Berry interviewed Terry malfunctioned. Officer Berry's testimony was the only evidence of Terry's confession.

of the Mulberry address. At the time of Terry's trial, Derrick had already been tried and convicted for possessing the cocaine base and was awaiting sentencing.

The jury found Terry guilty of possession of, or conspiracy to possess, over fifty grams of cocaine base and failure to have a drug tax stamp. Terry admitted to being a subsequent offender and was sentenced to ninety years in jail with a one-third mandatory minimum. He now appeals his conviction and sentence.

## II. Scope and Standard of Review.

Challenges to the sufficiency of corroboration to support a defendant's confession are reviewed for correction of errors at law. *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011). We examine the evidence in the light most favorable to the verdict to determine if there is substantial evidence in the record. *Id.* Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Id.* Circumstantial and direct evidence are equally probative, and we may draw all fair and reasonable inferences from the evidence. *Id.*

Because it implicates a defendant's Sixth Amendment right to counsel, we review ineffective-assistance-of-counsel claims de novo. *State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010). Terry must prove by a preponderance of the evidence counsel failed to perform an essential duty and he suffered prejudice as a result. *See id.* "To prove counsel failed to perform an 'essential duty,' a defendant must prove counsel's performance was deficient, meaning trial

counsel 'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* at 878 (citations omitted). "To establish prejudice, a defendant must prove 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (citations omitted). "If a claim lacks one of the elements of an ineffective-assistance-of-counsel claim, it is not necessary for us to address the other element." *State v. Hischke*, 639 N.W.2d 6, 8 (Iowa 2002).

Finally, Terry's challenge that the court relied on unproven offenses in reaching its sentencing decision is reviewed for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). His claim that his sentence is grossly disproportionate to his case implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment and article I, section 17 of the Iowa Constitution, and is thus reviewed de novo. *State v. Oliver*, 812 N.W.2d 636, 639 (Iowa 2012).

### III. Sufficiency of the Evidence—Corroboration.

Terry's first claim on appeal is that there is insufficient evidence to support his conviction. While there was evidence he confessed his involvement to Officer Berry, Terry claims there is no other evidence that would link him to the crime.

As an initial matter, the State maintains Terry's sufficiency claim was not preserved for appellate review because counsel made an insufficient motion for judgment of acquittal. *See State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2011) ("To preserve error on a claim of insufficient evidence for appellate review in a

criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal."). At the close of all the evidence, defense counsel made a motion for judgment of acquittal, stating, "Comes now, the defendant, Terry Daniels, by and through counsel, and would state that a directed verdict should be handed down at this time because the State's case, even when taken in the light most beneficial to the State, does—does not raise a jury question."

While the language used in the motion alone would be insufficient to preserve error on a claim that Terry's confession lacked corroboration, when we view the State's resistance to the motion along with the pretrial motions made in this case, it is clear both parties and the court understood the grounds for the motion. *See State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005) ("[W]e recognize an exception to the general error-preservation rule when the record indicates that the grounds for a motion were obvious and understood by the trial court and counsel."). The State's resistance asserted there was sufficient corroboration for the confession, specifically outlining the corroborating evidence and citing to case law to support its response. In addition, the corroboration of the confession was the subject of a motion in limine before the start of the trial, which indicates the court was alerted to the corroboration issue. We therefore consider the sufficiency claim made on appeal preserved for our review.

Extrajudicial confessions of a defendant cannot result in a conviction unless there is corroborating evidence of the crime charged. *Meyers*, 799 N.W.2d at 139; *see also* Iowa R. Crim. P. 2.21(4) ("The confession of the

defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the defendant committed the offense."). Corroborating evidence is sufficient to support a conviction if it "tends to 'confirm some material fact connecting the defendant with the crime.'" *Meyers*, 799 N.W.2d at 139 (citation omitted). "It is sufficient as long as it supports the content of the confession and if, together with the confession, proves the elements of the charge against the defendant beyond a reasonable doubt." *Id.* The corroborating evidence can be either direct or circumstantial, and it does not need to be strong or go to the whole of the case so long as it confirms some material fact. *Id.* While the existence of corroborative evidence is for the court, the sufficiency of the evidence is a question for the jury. *State v. Polly*, 657 N.W.2d 462, 467 (Iowa 2003).

In claiming there is no corroboration to support his confession to police, Terry points to the lack of physical evidence of drug distribution found at his residence on Fowler and the lack of evidence connecting him to the scales and baggies found at the Mulberry residence. The corroboration necessary for Terry's confession comes not from the search warrants executed on the two homes but from the details specified in the confession itself when compared to the details surrounding the narcotics found in the black duffle bag. Terry stated he had a source in Chicago that supplied him with crack cocaine. The crack cocaine arrived on a bus from Chicago in a black duffle bag in the physical possession of Terry's nephew, who was picked up from the bus station by Terry's daughter. Terry stated his source provided him with two ounces of crack cocaine

three times per month. The amount of crack cocaine found in the duffle bag was approximately two and one-half ounces. Terry stated he paid $1300 per ounce, which officers familiar with narcotics trafficking indicated was consistent with the distribution, as opposed to street sale, cost of the drug. *See id.* (noting sufficient corroboration existed to support the defendant's confession where the details of the crime as recounted by the defendant were identical to the details reported by the victim); *see also State v. Origer*, 418 N.W.2d 368, 371 (Iowa Ct. App. 1987) (stating sufficient corroboration existed to support defendant's confession that he shot the victim and the body would not be found for some time when the victim had been shot and his body, located in an out-of-the-way ditch, was not found for a month).

Because sufficient corroboration exists to support Terry's confession to Officer Berry, we conclude the jury's verdict is supported by substantial evidence. *See Meyers*, 799 N.W.2d at 138.

## IV. Ineffective Assistance of Counsel.

Next, Terry claims his trial counsel was ineffective in a number of ways requiring that he be granted a new trial. Specifically, he claims counsel failed (1) to introduce into evidence his statements to police denying his involvement in the conspiracy, (2) to object when a police officer testified as to what address Terry gave upon being booked into jail, (3) to call Terry's long-term girlfriend to testify in his defense, (4) to move to suppress his confession based on a lack of *Miranda* warnings, (5) to object when the court did not send the jury back to deliberate when it appeared the jury did not have a unanimous verdict during the

polling of the jury, (6) to object to improper rebuttal testimony that admitted his prior bad acts, and (7) to request the court include a jury instruction regarding the fact his confession was not recorded. Normally, we preserve ineffective-assistance claims for postconviction proceedings to allow the development of a complete record and permit counsel to respond to the allegations. *State v. Shanahan*, 712 N.W.2d 121, 136 (Iowa 2006). However, where the appellate record shows as a matter of law a defendant can either prevail or not prevail on his ineffective-assistance claim, we will not preserve the issue but will address it on appeal. *Id.*

**A. Statements Terry Made Denying Involvement.** In his first claim, Terry asserts counsel was ineffective in not cross-examining the testifying officers, specifically Officer Sidles, regarding a statement in Officer Sidles's report that Terry denied having anything to do with the sale and distribution of crack cocaine and did not know anything about his daughter or nephew bringing in the drug from Chicago. Because of the importance of his confession to the State's case, he claims he was prejudiced when the jury was not told he also denied any involvement in the crime to police.

In this case, Officer Berry testified a "couple of other investigators had spoken to [Terry] for a little while. They hadn't—they hadn't obtained a lot of information from him." However, defense counsel did not inquire into what Terry had told these other investigators. Because our record is unclear what information Terry provided to the other officers and whether this information would have had an impact on the jury's verdict, we preserve this claim for

possible postconviction-relief proceedings. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("If . . . the court determines the claim cannot be addressed on appeal, the court must preserve it for a postconviction-relief proceeding, regardless of the court's view of the potential viability of the claim.").

**B. Booking Address.** Next, Terry claims his trial counsel should have objected when a police officer testified that Terry gave the Mulberry address as his home address when he was booked into jail. Terry claims counsel should have objected to this testimony by the officer on either foundation or hearsay grounds and should have impeached the officer with evidence in the record indicating Terry resided at the Fowler address.

Terry does not indicate what foundation objection should have been made. He simply states in his brief that the testimony about what address Terry gave at booking "may not be true" and there was no information about how the officer came to know this information. *See Carter v. Wiese Corp.*, 360 N.W.2d 122, 132 (Iowa Ct. App. 1984) (noting an objection that simply said the evidence was "without a proper foundation" was inadequate as the objection must specifically identify what aspect of the foundation is lacking). Terry also claims this testimony was objectionable on hearsay grounds. *But see* Iowa Rs. Evid. 5.801(d)(2) (concluding an admission by a party opponent is outside the definition of hearsay), 5.804(b)(3) (describing the statement-against-interest hearsay exception). Again, because we conclude the record on appeal is inadequate to address this claim, we preserve it for possible postconviction-relief proceedings. *See Johnson*, 784 N.W.2d at 198.

**C. Terry's Girlfriend.** Terry also complains his trial counsel should have called as a favorable witness his long-term girlfriend, Mary, to testify in his defense. The minutes of testimony indicate Mary informed the officers she had observed Terry in possession of crack cocaine when the couple lived in Chicago years ago, but she had no knowledge about any current activities. On appeal, Terry claims she could have been a sympathetic defense witness and supported his claim of innocence. He also claims Mary may have been in the interrogation room when Terry confessed to Officer Berry, and if that was the case, Mary may have been able to shed light on exactly what Terry said.

The defense only called one witness to testify—Derrick. The record does not disclose the reason Mary was not called as a witness or what information she could have provided. As the decision regarding what evidence to present to a jury falls within the realm of defense strategy, we preserve this claim for possible postconviction-relief proceedings. *See State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) ("[P]ostconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance.").

**D. *Miranda* Warnings.** Terry asserts his counsel should have filed a motion to suppress his confession because there was no indication in Officer Berry's report that he advised Terry of his *Miranda* rights before Terry made the incriminating statements. He also asserts counsel was ineffective in not challenging whether his statement was voluntary or the result of promissory leniency. The minutes of testimony indicate Terry was given his *Miranda* warnings by Officer Sidles on January 6 at 2:12 p.m. The details surrounding the

*Miranda* warnings and Terry's waiver of his rights prior to giving his incriminating statement are not contained within our record on appeal, and thus, we determine the record is not adequate for us to address this claim. We preserve it for possible postconviction-relief proceedings.

**E. Unanimous Verdict.** Next, Terry contends counsel should have insisted the court send the jury back to deliberate when it became clear during the polling of the jury that one juror had questions regarding the verdict. After the guilty verdict was announced, defense counsel requested the jury be polled pursuant to Iowa Rule of Criminal Procedure 2.22(5). Each member responded in the affirmative when asked by the court, "Is this your true and correct verdict?" except for one member who responded, "Yes, with questions." After an off-the-record discussion between the court and counsel, the court advised the jury that their verdict needed to be unanimous and then polled the jury again. During the second poll, the same juror stated, "It's the same as I said before, yes, but with— I need to clearly understand something though. That's my—yes, but I—before— from what I'm understanding—." The court then returned the jury to the deliberation room except for this juror who the court directed to remain behind. The court addressed the juror:

> [N]o matter how you personally came to that decision, the end result is the only thing that needs to be unanimous from our jury. So my question to you is, is the verdict that was rendered your verdict?
>     [Juror]: Yes.
>     The Court: All right.
>     [Juror]: My question's not something that's outside of what was stated. It's just about on that—it's really a simple question because it says or. It says Possession or Conspiracy. Is that saying both, or are you saying one or the other?

The Court: It can be either or.

[Juror]: Okay. That's all—it was real simple. I just wanted to make sure, like, because I—I might say yes on one and not the other, so that's—I—I wanted to be clear on—

The Court: All right.

[Juror]: —what that meant.

The Court: Your verdict is as is reflected on the verdict form? It doesn't matter precisely the theory that it's based on, but it is as reflected on the verdict form and as was read; is that correct?

[Juror]: Yes.

The Court: All right. Let's return the—is everyone satisfied? [Prosecutor]?

[Prosecutor]: Yes, Your Honor.

The Court: [Defense Counsel]?

[Defense Counsel]: Yes, Your Honor.

The court then returned the rest of the jury to the courtroom, where the jury was polled a third time, and the juror in question responded in the affirmative that it was her true and correct verdict.

Terry claims on appeal his counsel was ineffective in not insisting that the court send the entire jury panel back to deliberate once it became clear a juror had questions about the verdict. *See* Iowa R. Crim. P. 2.22(5) ("A party may then require a poll asking each juror if it is the juror's verdict. If any juror expresses disagreement on such poll or inquiry, the jury shall be sent out for further deliberation . . . ."). He also claims that the proper procedure for a jury question was not followed as provided in Iowa Rule of Criminal Procedure 2.19(5)(g).[2]

---

[2] This rule provides

> After the jury has retired for deliberation, . . . if it desires to be informed on any point of law arising in the cause, it must require the officer to conduct it into court, and, upon its being brought in, the information required may be given, in the discretion of the trial court. . . . Where the court gives the jury additional instructions, this shall appear of record. The procedures described shall take place in the presence of

The State responds that the juror at issue did not indicate that she disagreed with the verdict, as rule 2.22(5) requires, but only said she had a question or that she needed to understand something clearly. The clarification she sought, and the information the court provided her, was already part of the jury instructions. Instruction No. 37 stated,

> Where two or more alternative theories are presented, or where two or more facts would produce the same result, the law does not require each juror to agree as to which theory or fact leads to his or her verdict. It is the verdict itself which must be unanimous, not the theory or facts upon which it is based.

The State maintains that counsel did not breach an essential duty because the verdict was in fact unanimous and further deliberation was not required. The State also maintains Terry cannot show the result of the trial would have been different if counsel had urged the court to respond in a different manner.

Because the juror at issue did not indicate disagreement regarding the verdict but only sought to have an issue clarified and because the information given to the juror by the court in response to the juror's question was the same information already contained in the instructions, we agree Terry has failed to show either that counsel breached an essential duty or that the result of the proceeding would have been different had counsel lodged an objection to the action taken by the court. We therefore deny this ineffective-assistance claim.

**F. Rebuttal Testimony.** For his next claim, Terry asserts counsel should have objected to the rebuttal testimony offered by the State because it contained

---

defendant and counsel for the defense and prosecution, unless such presence is waived.

Iowa R. Crim. P. 2.19(5)(g).

evidence of his prior bad acts, which he claims is inadmissible. Specifically, Terry claims counsel should have objected to the testimony of Officer Sidles, who disclosed that he had observed a drug transaction occur at the Fowler residence in December 2012. Officer Sidles testified a person entered the residence without crack cocaine and emerged a few minutes later with crack cocaine.

Under Iowa Rule of Evidence 5.404(b): "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." However, the rule goes on to state evidence of other crimes could be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Iowa R. Evid. 5.404(b). Because counsel did not object to this evidence offered at trial, we do not have a record from which we can evaluate whether one of the exceptions to the prior bad acts prohibition applies or whether such evidence would have been more probative than prejudicial. As a result, we preserve this claim for possible postconviction relief.

Terry further claims the State's failure to put this information into the minutes of testimony violated Iowa Rule of Criminal Procedure 2.19(2).[3] As Officer Sidles was called in rebuttal, the State had no obligation to disclose the contents of his testimony in the minutes of evidence. *See State v. Belken*, 633

---

[3] This rule provides in part:
> The prosecuting attorney, in offering trial evidence in support of an indictment, shall not be permitted to introduce any witness the minutes of whose testimony was not presented with the indictment to the court; in the case of informations, a witness may testify in support thereof if the witness's identity and a minute of the witness's evidence has been given pursuant to these rules.

Iowa R. Crim. P. 2.19(2).

N.W.2d 786, 795 (Iowa 2001) ("Rebuttal witnesses, however, are not required to be disclosed by the State."). Thus, counsel was not ineffective for failing to object to the testimony on this ground.

**G. Spoliation Instruction.** Finally, Terry asserts counsel should have requested the court give the jury an instruction that the failure of his confession to be recorded could affect the weight and believability of the confession. Terry maintains such an instruction was considered and approved in *State v. Avila*, No. 13-0134, 2014 WL 1495496, at *8–9 (Iowa Ct. App. Apr. 16, 2014). In *Avila*, the court instructed the jury:

> In determining the weight and believability of the confession, you may consider:
> 1. Defendant's mental capacity and intelligence.
> 2. Defendant's mental and emotional state at the time it was made.
> 3. Whether it was knowingly and intelligently made.
> 4. Whether the Defendant understood his statement to be an admission.
> *5. Whether the Defendant's statement was recorded.*
> 6. Any other evidence relating to the confession.

2014 WL 1495496, at *9 (emphasis added). The *Avila* court determined this instruction fairly stated the law as it applied to the case and the district court did not abuse its discretion in not giving a different instruction regarding the failure to record the confession. *Id.*

The same instruction was given to the jury in this case except number 5 was not included among the list of factors to be considered by the jury. The confession did have a critical part in this case, and there was extensive discussion at trial about the lack of recording. However, we preserve the claim for postconviction relief proceedings as we determine this record is inadequate to

address whether counsel breached a duty or whether Terry suffered prejudice. *See State v. Fountain*, 786 N.W.2d 260, 267 (Iowa 2010) ("Although trial counsel failed to request the proper instruction, we are unable on this record to assess whether the failure constituted ineffective assistance of counsel.").

**H.  Cumulative and Structural Error.**  Terry claims the multitude of errors made by counsel together resulted in him not receiving a fair trial.  He also claims counsel committed a structural error mandating a new trial.  Terry fails to articulate what structural error counsel committed, and therefore, we reject that claim.  In addition, because we did not find any error in the claims we addressed, and because we preserved the remaining claims for postconviction relief, we need not address his cumulative error claim.

**V. Sentencing.**

Terry's last claim asserts he is entitled to a resentencing because the court relied on unproven offenses in reaching its sentencing decision and his sentence is grossly disproportionate to his crime.

**A.  Unproven Offenses.**  We first address his claim that the court relied on an unproven offense when determining the sentence; specifically, he asserts that the sentencing court's references to prior drug transactions were not proved by the State and should not have been used for the purposes of sentencing.

Sentencing courts may not consider an unproven or unprosecuted offense when sentencing a defendant unless (1) the facts before the court show the defendant committed the offense or (2) the defendant admits it.  *State v. Jose*, 636 N.W.2d 38, 41 (Iowa 2001).  When a sentence is challenged on the basis of

improperly considered unproven criminal activity, "the issue presented is simply one of the sufficiency of the record to establish the matters relied on." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000). "The standard of proof during the sentencing stage is lower than the standard used during trial." *Id.* But if the court relies on any improper consideration, even if it is a secondary consideration, resentencing is required. *Id.* We are not free to "speculate about the weight the trial court mentally assigned to [the improper factors]." *State v. Messer*, 306 N.W.2d 731, 733 (Iowa 1981). However, "[t]here is no general prohibition against considering other criminal activities by a defendant as factors that bear on the sentence to be imposed." *State v. Longo*, 608 N.W.2d 471, 474 (Iowa 2000).

Prior to pronouncing sentence, the court explained the factors it considered in fashioning a sentence:

> Mr. Daniels, in considering your sentence, I've thought about the following things:
>
> I've thought about the quantity of the drug involved, I have considered [the prosecutor's] argument about the fact that in light of your prior conviction and in light of some of the other evidence that came in about bringing in drugs from Chicago on a regular basis— or I guess from other places or Chicago. What stands out in my mind is that this is not an isolated incident. I do believe with the quantity involved and the nature of how and—what was being distributed, that the distribution of those created a significant danger to our community. I do find also that the fact that you are the second offender, as we have previously noted and to which you pleaded guilty. I also make note of [the prosecutor's] statements including reference to your statements and the Presentence Investigation Report, that essentially, the sale of drugs has been a business to you. It is not, again, something you've been wrapped up in as a user and selling to continue your own use, your own substance abuse issue. It does appear that it's been something you've conducted as a business. And in my mind, that makes a

greater danger to the community, someone who's literally out selling a controlled substance as a business venture.

I have also taken into consideration your age and the arguments that have been made by your counsel.

On appeal Terry argues that there was never any evidence of prior transactions or any evidence the conspiracy extended beyond January 6, 2013, except vague testimony about an incident in December 2012 that should never have been received by the court.  However, Terry admitted the on-going nature of his activities in his confession to Officer Berry and this confession was supported by sufficient corroborating evidence.  Terry admitted that his source provided him with two ounces of crack cocaine, three times per month.  There was corroborating evidence fitting with the details in his confession.  Moreover, there was also testimony about "short-term traffic" outside both residences on Mulberry and Fowler, which was consistent with the sale of narcotics.  Therefore, there are facts before the court showing Terry was involved in prior drug transactions, and we conclude the court did not consider an unproven crime during sentencing.

**B.  Gross Disproportionality.**  Terry also argues that his sentence is unconstitutional because it constituted cruel and unusual punishment under both the federal and state constitutions.  He contends his sentence, concurrent terms of ninety years for the cocaine charge and five years for the drug-tax-stamp violation, is grossly disproportionate to the crime he committed, and thus his sentence, as applied to him, is unconstitutional.

Both the Eighth Amendment to the United States Constitution and article I, section 17 of the Iowa Constitution prohibit the infliction of cruel and unusual

punishment. *See* Iowa Const. art. I, § 17 ("Excessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted."). Terry argues his sentence is cruel and unusual punishment "because it is so excessively severe that it is disproportionate to the offense charged." *See State v. Robbins*, 257 N.W.2d 63, 68 (Iowa 1977). When a defendant challenges his sentence under both article 1, section 17 of the Iowa Constitution and the Eighth Amendment of the United States Constitution, we analyze the claim under the "more stringent gross-disproportionality review" available under the Iowa Constitution. *Oliver*, 812 N.W.2d at 650.

To determine whether Terry's sentence is grossly disproportionate to his crime, we need to apply the three-step test developed in *Solem v. Helm*, 463 U.S. 277, 296-300 (1983). "The first step in this analysis, sometimes referred to as the threshold test, requires a reviewing court to determine whether a defendant's sentence leads to an inference of gross disproportionality." *Oliver*, 812 N.W.2d at 647. "This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence." *Id.* When the threshold test is satisfied, a court then proceeds to steps two and three of the analysis. *Id.* These steps require the court to engage in an intrajurisdictional analysis—"comparing the challenged sentence to sentences for other crimes within the jurisdiction"— and an interjurisdictional analysis—"comparing sentences in other jurisdictions for the same or similar crimes." *Id.* The first factor poses a high burden for Terry. *See Bruegger*, 773 N.W.2d at 873 ("[I]t is a rare case in which a threshold

comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." (internal quotation marks omitted)).

There are some general principles we must consider when reviewing a defendant's sentence to determine whether it is "grossly disproportionate" to the crime committed. *Oliver*, 812 N.W.2d at 650. First, we defer to legislative determinations of punishment and realize a sentence need not adhere to strict proportionality to be constitutional. *See Bruegger*, 773 N.W.2d at 872 ("[A] reviewing court is not authorized to generally blue pencil criminal sentences to advance judicial perceptions of fairness."); *see also Ewing v. California*, 538 U.S. 11, 28 (2003) (emphasizing a reviewing court does not "sit as a 'superlegislature' to second-guess policy choices"). Second, although we impose a more rigorous review under our state constitution than under its federal counterpart, it remains rare that a sentence is so grossly disproportionate to the offense that it satisfies the threshold inquiry under *Solem. Oliver*, 812 N.W.2d at 650 (citing Iowa cases in which defendants failed to meet this preliminary standard). Third, we regard a recidivist offender as more culpable and, therefore, more deserving of a longer sentence than a first-time offender. *Id.* Fourth, the unique features of a case may "converge to generate a high risk of potential gross disproportionality." *Id.* at 651 (quoting *Bruegger*, 773 N.W.2d at 884).

Keeping these principles in mind, we turn to the instant facts and consider whether Terry's sentence was grossly disproportionate to his offense of possession of, or conspiracy to possess, over fifty grams of cocaine base and failure to have a drug tax stamp under article 1, section 17 of the Iowa

Constitution. We find Terry's circumstances are not so unique as to "converge to form a high risk of disproportionality." See *Bruegger*, 773 N.W.2d at 884. Unique features to be considered include "a broadly framed crime, the permissible use of preteen juvenile adjudications as prior convictions to enhance the crime, and a dramatic sentence enhancement for repeat offenders." *Id.* Here, Terry's actions were not "inadvertently caught by a broadly written statute." *See Oliver*, 812 N.W.2d at 651. Rather, his conduct falls squarely within the elements of possession of a controlled substance, to wit: more than 50 grams of cocaine base with intent to distribute—a special class "B" felony—and failure to have a drug tax stamp—a class "D" felony. See Iowa Code §§ 124.401(1)(a)(3), 453B.12. Although his sentence was enhanced based on a previous felony drug offense, this enhancement was provided in Iowa Code section 124.411, and the sentencing court imposed a 90-year term of incarceration instead of the maximum sentence of 150 years. Further, Terry's sentence was not based upon any preteen juvenile adjudications.

To fully address the proportionality question, we consider the totality of circumstances, including the mitigating factors identified by Terry, as well as other "potential factors that tend to aggravate the gravity of the offense and magnify the consequences on [the victim]." *Bruegger*, 773 N.W.2d at 886. Here, the district court captured the gravity of the offense when it noted the sale of drugs has been a business for Terry, which created a significant danger to the community. After considering the features of Terry's case, we do not find his sentence to be grossly disproportionate. Because the punishment does not

create an inference of gross disproportionality, we need not analyze the second and third factors of *Solem*. *Oliver*, 812 N .W.2d at 653.

## VI. Conclusion.

Because we find adequate corroboration to support Terry's confession to the crimes, we conclude his conviction is supported by sufficient evidence. We reject Terry's ineffective-assistance claim that counsel should have requested the court send the jury back to deliberate when one juror voiced questions about the verdict during the polling of the jury. We conclude Terry has failed to show either that counsel breached an essential duty or that he suffered prejudice. We likewise reject Terry's claim that counsel should have objected when the prosecution offered rebuttal evidence that was not previously disclosed in the minutes of testimony. However, the record on appeal is inadequate to address the remaining ineffective-assistance claims, and we preserve them for possible postconviction-relief proceedings. Finally, we affirm his sentence, concluding the court did not consider an unproven offense and his sentence was not grossly disproportionate to this offense.

**AFFIRMED.**